UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-208 (GK) |
| | : | |
| v. | : | |
| | : | |
| FRANK BERKELEY, | : | VIOLATIONS: 21 U.S.C. §841(a)(1) |
| | : | and §841(b)(1)(A)(iii) |
| Defendant. | : | (Distribution of 50 Grams or More |
| | : | of Cocaine Base) |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW PLEA

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia (the "United States" or "Government"), respectfully submits this response in opposition to the defendant's motion to withdraw his guilty plea (the "Motion"). In support of this opposition, the United States relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this matter:

### Background

1.  On August 2, 2005, agents from the United States Drug Enforcement Administration ("DEA") and the Metropolitan Police Department ("MPD") met with a Confidential Source (hereafter referred to as the "CS"), regarding the purchase of approximately sixty-two (62) grams of crack cocaine from the defendant, Frank Berkeley. At approximately 1:30 p.m., the CS placed a telephone call to the defendant's cellular telephone, telephone number (240) 603-8934, regarding the purchase of approximately 62 grams of cocaine. The defendant informed the CS that the price would be seventeen hundred ($1700.00), plus two hundred

($200.00) owed from a prior debt. At approximately 1:40 p.m., agents followed the CS to the 1000 block of 44th Street, N.E., Washington, D.C., the pre-determined meet location. At approximately 1:35 p.m., the defendant arrived in the 1000 block of 44th Street, N.E., Washington, D.C., in a multi-colored Chevrolet Caprice bearing Maryland license plate number 4AYY65. Captured on video recording, the defendant exited the driver's side and entered the CS's vehicle, where he sat in the front passenger seat and engaged in a conversation about the CS buying between an eighth of a kilo (1/8) and a half of a kilo (½). The defendant handed the CS a clear plastic wrap containing approximately 62 grams of suspected crack cocaine, in exchange for nineteen hundred ($1,900.00) dollars of pre-recorded DEA funds. The conversation between the CS and the defendant inside the CS's vehicle was recorded. The defendant exited the CS's vehicle, and both parties drove away. The suspected crack cocaine was seized by law enforcement officers and later submitted for chemical analysis. A chemical analysis of the suspected crack cocaine conducted by the DEA Mid-Atlantic Laboratory confirmed that the substance provided by the defendant to the CS was cocaine base, also known as crack cocaine, and weighed 62.2 grams.

     2.     On September 21, 2005, at approximately 11:35 a.m., the defendant contacted the CS via telephone regarding the purchase of 62 grams of crack cocaine. The defendant advised the CS he would be there (referring to the 1700 block of Benning Road, N.E., Washington, D.C.) by 12:00 p.m. At approximately 12:10 p.m., agents observed the defendant arrive at the 1700 block of Benning Road, N.E., Washington, D.C., in a multi-colored Chevrolet two-door Oldsmobile with a rag top, bearing Maryland license plate MNS-216. The defendant exited the driver's side and entered the CS's vehicle and sat in the right rear passenger seat and engaged in

a conversation. The CS introduced the defendant to an undercover agent (hereafter referred to as the "UC") and they shook hands. The defendant advised the CS to drive around the parking lot and the defendant handed the UC a clear plastic wrap containing approximately 62 grams of suspected crack cocaine, in exchange for seventeen hundred ($1,700.00) dollars. The conversation between the CS, UC and the defendant inside the CS's vehicle was recorded. Moments later, as seen on video recording, the defendant exited the CS's vehicle, walked back to his vehicle, and left the area. The suspected crack cocaine was seized by law enforcement officers and was later submitted for chemical analysis. A chemical analysis of the suspected crack cocaine conducted by the DEA Mid-Atlantic Laboratory confirmed that the substance provided by the defendant to the UC was cocaine base, also known as crack cocaine, and weighed approximately 61.8 grams.

     3.     As a result of the above-described drug transactions, the defendant was indicted on July 11, 2006, on two counts of Unlawful Distribution of 50 Grams or More of Cocaine Base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii). A warrant was issued for his arrest that same day.

     4.     The defendant was arrested on July 19, 2006, outside his residence, at 7002 Annapolis Road, Landover Hills, Maryland, as the defendant approached and began to enter a Dodge Durango bearing Maryland license plate number 655M797, which is registered to the defendant's father, James Siebert. During the search of the defendant incident to arrest, agents seized approximately 31 grams of suspected crack cocaine from the right pocket of the defendant's cargo shorts. Agents also seized a handgun located on the front floorboard of the passenger side of the Dodge Durango inside a canvas Adidas bag. The handgun was a Taurus

9mm with a round in the chamber and an additional 12 rounds in the magazine. Additionally, agents seized $91,980 in U.S. currency, wrapped with rubber bands, from the front passenger's seat in a canvas bag. A blue and black Sprint Sanyo MM-7500 cellular telephone, telephone number (910) 795-7627, was also recovered from the front passenger side of the Dodge Durango. According to the defendant's father, the defendant had sole possession of the 1999 Dodge Durango since mid-June 2006.

5. On August 3, 2006, attorney Douglas Wood entered his appearance on behalf of the defendant, who had previously retained Mr. Wood. On that same date, the Court granted the defendant's request for additional time to review discovery and evaluate the case. The Court set a status hearing for that purpose on August 29, 2006, on which date, the defense again requested additional time to consider the case and assess the Government's plea offer. The Court set a subsequent status hearing for September 14, 2006.

6. The Government provided the defense with a copy of the plea agreement and a written statement of the offense on September 12, 2006 (hereinafter, the "Plea Agreement" and "Statement of Offense," respectively). At the status hearing on September 14, 2006, the defendant requested a plea hearing. The Court set a plea hearing for September 29, 2006.

7. On September 29, 2006, pursuant to the Plea Agreement, the defendant entered a plea of guilty in the above captioned case to one count of Unlawful Distribution of 50 Grams or More of Cocaine Base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii).

8. As set out in the Plea Agreement, pursuant to Title 21, United States Code, Section 841(b)(1)(A)(iii), the charge to which the defendant pled guilty carries a penalty of a

term of imprisonment not less than ten (10) years and not more than life, a fine not to exceed $4,000,000.00, and, a term of supervised release of at least five (5) years. The defendant was informed that he was not eligible for a parole, probation, or a suspended sentence, and that a special fee of $100 would be imposed against him pursuant to Title 18, United States Code, Section 3013.

9. The defendant agreed that, pursuant to Section 1B1.3 of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), he is accountable for selling approximately 62.2 grams of cocaine base, also known as crack, on August 2, 2005, and selling approximately 61.8 grams of cocaine base on September 21, 2005, and that the above mentioned amounts (totaling 124 grams) represent the total amount involved in his relevant criminal conduct, including amounts he distributed or possessed with intent to distribute.

10. In consideration of the defendant's plea to the above offense, the Government agreed to dismiss the remaining count in the indictment, at the time of sentencing. Furthermore, the Government secured letters of declination from the Maryland State's Attorney's Office and the United States Attorney's Office for the District of Maryland whereby the Maryland State's Attorney's Office and the United States Attorney's Office for the District of Maryland agreed respectively not to prosecute the defendant for the illegal conduct occurring on July 19, 2006, at the time of his arrest, concerning the seizure of approximately 30 grams of cocaine base from the defendant's person, as well as a firearm and approximately $91,980 from inside a Dodge Durango, bearing Maryland license plate number 655M797, which vehicle the defendant was approaching and about to enter at the time of his arrest.

11. The Government also agreed, assuming the defendant clearly demonstrated

acceptance of responsibility to the satisfaction of the Government through his allocution and subsequent conduct prior to the imposition of sentence, that a 2-level reduction would be appropriate, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant accepted responsibility as described in the previous sentence, the Government agreed that an additional 1-level reduction would be appropriate, pursuant to U.S.S.G. § 3E1.1(b).

12.     The parties agreed that a sentence within the applicable Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, Section 3553(a). However, the parties agreed that either party may seek a sentence outside of the applicable Guidelines Range and suggest that the Court consider a sentence outside the applicable Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

13.     On October 5, 2006, the defendant filed a motion to substitute counsel in this case. The Court granted the defendant's request; Douglas Wood's motion to withdraw as counsel was granted; and attorney Harry Tun entered his appearance on behalf of the defendant on October 10, 2006. The Court also subsequently reset the sentencing hearing to February 15, 2007.

14.     On February 2, 2007, prior to sentencing in this case, the defendant filed its Motion requesting to withdraw his guilty plea because, according to him, he is innocent of the charges, he was unduly pressured by the parties involved in the case to take the plea offer, and he was ineffectively assisted by prior counsel, Douglas Wood, who, according to the defendant, failed to conduct any investigation, interview possible witnesses, and review discovery with him.

15.     As a result of the defendant's filing of his Motion, the court vacated the

sentencing hearing date and set a status hearing for February 14, 2007, at 10:15 a.m. For the reasons stated below, the Court should deny the defendant's request because the plea was entered voluntarily and intelligently by him, with the assistance and advice of experienced and competent counsel, free from any claim of coercion by the Government, and following an appropriate Rule 11 colloquy with the Court. Moreover, as shown below, the defendant's claim of "actual innocence" is spurious, at best. As a result, the defendant is unable to meet his burden of proving a "fair and just reason" for withdrawing his plea. His Motion should therefore be denied.

### Legal Standard

16.     The defendant filed his Motion before the Court imposed a sentence upon him. As a result, the defendant's Motion is governed by the provisions of Federal Rule of Criminal Procedure 11(d)(2), which provides, *inter alia*: "A defendant may withdraw a plea of guilty or nolo contendere .... after the court accepts the plea, but before it imposes sentence if: (B) the defendant can show a fair and just reason for requesting withdrawal." The Supreme Court's general test for the validity of plea agreements is whether the plea represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). It is the defendant's burden to prove there are valid grounds for withdrawal. *See* Fed. R. Crim Pro. 11(d)(2)(B); *United States v. Rogers,* 387 F.3d 925, 932 (7th Cir. 2004); *United States v. Michaelson*, 552 F.2d 472 (2d Cir. 1977).

### The "Fair and Just" Standard

17.     Although the Rules provide the verbiage for the standard, as is so often the case, they offer mute guidance in its application. As a result, resort to case authority is necessary.

Fortunately, there is a wealth of case authority setting forth the parameters of the "fair and just" standard of Rule 11(d)(2)(B). In this regard, the D.C. Circuit has recently reiterated this jurisdiction's established rule that a court adjudicating a motion to withdraw a guilty plea prior to sentencing must consider: "(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted." *United States v. West*, 392 F.3d 450, 455 (D.C. Cir. 2004) (*quoting United States v. Hanson*, 339 F.3d 983, 988 (D.C. Cir. 2003)).

### The Rule 11 Plea Procedure

18.     Of these three factors, the third factor is the most important, *see West,* 392 F.3d at 455*; United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir. 1993); *United States v. Tolson*, 372 F. Supp.2d 1, 9 (D.D.C. 2005), and requires a showing that the district court's taking of the guilty plea either failed to conform to the requirements of Federal Rule of Criminal Procedure 11, *see West*, 392 F.3d at 458, or was in some other sense constitutionally deficient. *See United States v. Taylor*, 139 F.3d 924, 929 (D.C. Cir. 1998); *United States v. Ford*, 993 F.2d 249, 251 (D.C. Cir. 1993).

19.     While the Court of Appeals has often balanced the three factors, in fact "none of [the D.C. Circuit's] cases would have been decided differently if the only inquiry undertaken were whether the defendant's guilty plea was taken in compliance with Rule 11." *United States v. Cray*, 47 F.3d 1203, 1207 (D.C. Cir. 1995) (citations omitted). Indeed, in this Circuit, the examination of the first factor – actual innocence/legally cognizable defense – is only evaluated after the Court has determined whether the defendant alleged a defect in the Rule 11 plea

proceedings sufficient to justify granting a motion to withdraw the plea. *See Cray*, 47 F.3d at 1206; *Tolson*, 372 F.Supp.2d at 9. Clearly, insignificant or immaterial defects in the Rule 11 plea proceedings are insufficient to meet the necessary burden. In this regard, Rule 11, itself, cautions that a "variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. R. Crim. Pro. 11(h);[1] *see generally*, Vol. 1A, Wright, C.A., Federal Practice & Procedure, ch. 5, § 178 (West 1999 & Supp. 2006).

20.     A defendant "who fails to show some error under Rule 11 has to shoulder an extremely heavy burden if he is to ultimately prevail" in his withdrawal motion. *Cray*, 47 F.3d at

---

[1] *See., e.g., United States v. Saxena*, 229 F.3d 1 (1st Cir. 2000) (failure to tell defendant he could not withdraw guilty plea if sentence recommendation not followed harmless error, where that information was contained in the written plea agreement signed by defendant); *United States v. Smith*, 184 F.3d 415 (5th Cir. 1999) (court's failure to personally insure that defendant understood the charges harmless error, where defendant does not maintain she did not understand the charges and does not challenge her attorney's assertion that he reviewed the indictment with her and she understood the charges); *United States v. Van Doren*, 182 F.3d 1077 (9th Cir. 1999) (failure to ask whether plea was the result of coercion by threats or promises harmless error in light of repeated inquiries into voluntariness generally); *United States v. Delacruz*, 144 F.3d 492 (7th Cir. 1998) (failure to advise defendant plea could not be withdrawn if judge did not accept prosecutor's recommendation harmless error, where defendant otherwise aware that court not bound by recommendation and thus would have entered guilty plea in any event); *United States v. Bachynsky*, 924 F.2d 561 (5th Cir. 1991) (inadequate statement of the nature of the charges harmless error, where record shows defendant indicated he understood charges and had discussed them with his attorney); *United States v. Ray*, 828 F.2d 399 (7th Cir. 1987) (failure to inform defendant of charge was harmless error, where there was other evidence the defendant knew of it); *United States v. Stead*, 746 F.2d 355 (6th Cir. 1984) (failure to advise that defendant was waiving right to confront witnesses and to be free of self-incrimination harmless error); *United States v. Coronado*, 554 F.2d 166 (5th Cir. 1977) (failure of court to make required explanation of the charges harmless error, where Rule 11 proceedings disclose that defendant otherwise understood them)*; and see United States v. Powell*, 354 F.3d 362 (5th Cir. 2003) (court's failure to advise the defendant she would be subject to mandatory restitution harmless error, where restitution ordered fell short of maximum possible fines (not imposed) of which defendant was advised); *United States v. King*, 234 F.3d 126 (2d Cir. 2000) (failure to advise on right to withdraw plea if court did not accept sentencing recommendation harmless error where defendant received sentence below government's recommendation).

1208. This is so, because the judicial system regards the withdrawal of guilty pleas as "inherently in derogation of the public interest in finality," *Horne*, 987 F.2d at 837, which "undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (*quoting United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

21. In *United States v. Hyde*, 520 U.S. 670 (1997), the government and the defendant entered into a plea agreement which called for the defendant to enter guilty pleas to four counts of the eight-count indictment, in exchange for the government's promise to dismiss the remaining counts and not to bring any other related fraud charges. At the plea proceeding, the defendant appeared in court and entered his guilty plea, which were accepted by the Court after it determined the plea was made knowingly, voluntarily, and intelligently and that there was a factual basis for the plea. *Id*. at 672. Nevertheless, the Court stated it was deferring its decision on acceptance of the plea agreement pending completion of the presentence report. *Id*. However, one month later, before any action could be taken on the plea agreement, the defendant moved to withdraw his guilty plea claiming that his guilty plea was the result of duress by the government and that his admissions to the District Court had been false.[2] Following an evidentiary hearing the District Court denied the motion, finding the defendant failed to prove his claim of duress. *Id*. at 672-73. On appeal, the Ninth Circuit reversed, reasoning that the guilty plea and the plea agreement were so "inextricably bound up together," so that deferral of acceptance of the plea agreement effectively constituted a deferral of the acceptance of the guilty

---

[2] Similar to the current-Rule 11(d)(2)(B), then-Rule 35(e) provided the court could permit the defendant to withdraw his plea before he was sentenced "if the defendant shows a fair and just reason." 520 U.S. at 671.

plea, as well (despite the District Court's affirmative statement that it was accepting the plea.) *Id*. at 673. A unanimous Supreme Court reversed, finding that the Circuit Court's reasoning ran counter to the language of Rule 11. In so doing, the Supreme Court noted that (then-)Rule 11(e) expressly stated that in type (A) and type (C) agreements (*i.e.*, for specific sentence or dropping charges), the Court may defer acceptance of the agreement in order to consider the presentence report. In addition, the Supreme Court cautioned:

> Given the great care with which pleas are taken under [the] revised Rule 11, there is no reason to view pleas so taken as merely 'tentative,' subject to withdrawal before sentence whenever the government cannot establish prejudice. * * * * We think the Court of Appeals' holding would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess.

520 U.S. at 676-77.

### Actual Innocence

22.     To be sure, a defendant seeking to withdraw his or her guilty plea is also required to "make out a credible claim of legal innocence as a threshold matter." *Cray*, 47 F.3d at 1206. However, "where the movant for withdrawal fails to demonstrate some constitutional or procedural error in the taking of his or her plea, circumstances will often justify a court's denial of a motion to withdraw that plea even where the movant makes out a legally cognizable defense to the charges." *Tolson*, 372 F.Supp.2d at 9. This is so, because "[w]ere mere assertion of legal innocence always a sufficient condition for withdrawal," as the Court of Appeals reasoned in *United States v. Barker*, 514 F.2d 208, 218-21 (D.C. Cir. 1975):

> [W]ithdrawal would effectively be an automatic right. There are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his aquittal .... Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary

> and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but "a grave and solemn act," which is "accepted with care and discernment."

*Id.*, at 221 (*quoting Brady v. United States*, 397 U.S. 742 (1970)). For that reason, it has been generally observed that withdrawal motions "will be granted on evidence of actual innocence alone only when that evidence is of the most compelling sort – for example, exculpatory DNA evidence or a newly discovered and credible alibi witness might, if proffered in a withdrawal motion, compel the Court to grant relief." *Tolson*, 372 F.Supp.2d at 25; *accord Cray*, 47 F.3d at 1209 (affirming denial of defendant's motion to withdraw guilty plea where there was no error in Rule 11 colloquy and defendant failed to advance an objectively reasonable argument for his innocence other than asserting a general denial of guilt).

23.  As shown below, the defendant fails to establish any material deficiency in his Rule 11 plea proceeding and fails to make out a cognizable claim of actual innocence. As a result, the defendant's Motion is without merit and should be denied.

## Analysis

24.  In his Motion, the defendant does not allege any shortcomings in his Rule 11 colloquy with the Court. Rather, the defendant maintains that his plea was constitutionally deficient for two main reasons: first, that he was pressured into entering his plea; and, second, that he received ineffective assistance from his former attorney. With respect to the former reason, the defendant claims that he was unduly pressured by the parties. In doing so, the defendant falsely suggests that the Government coerced his plea. To the contrary, the only form of pressure that stemmed from the Government in this case came from the completion of discovery, which made clear that the defendant was caught on both audio and video recordings

selling drugs to a confidential informant on one occasion and then to an undercover officer on a second occasion. Naturally a defendant would feel pressure to accept a plea offer under such circumstances when the evidence is so heavily stacked against him. To blame the Government for such pressure, as the defendant tries to do now, is ludicrous. Indeed, the defendant was wise to accept the Government's generous plea offer in which the Government agreed to a three point reduction in the defendant's offense level under the Sentencing Guidelines, promised to dismiss one count from the indictment that carries a ten year mandatory minimum sentence, and also obtained assurances that the defendant would not be prosecuted for conduct occurring at the time of his arrest that would have resulted in charges being brought against him in Maryland which would have brought him another ten-year mandatory minimum sentence. More importantly, the Court completely addressed the voluntariness of the defendant's decision to plea guilty during the Rule 11 colloquy on September 29, 2006. The Court asked the defendant numerous questions on the issue of voluntariness, and the defendant, under oath, made no mention that he was unduly pressured.[3] The Court should therefore reject the defendant's recent assertion that he was unduly pressured into entering his guilty plea.

25.     The second reason the defendant posits in hope of convincing the Court that his plea was constitutionally deficient is his claim that his former counsel was ineffective. As an initial matter, the Court should reject the defendant's claim because the defendant has not provided specific evidence that his prior attorney's advice was ineffective. In his Motion, the defendant merely asserts that his prior attorney, Douglas Wood, did not conduct any investigation

---

[3] Because the defense filed its Motion without first requesting a copy of the plea hearing transcript, the Government subsequently ordered the transcript from the court reporter, but will not receive it before having to file a timely response to the Motion.

and failed to interview any witnesses.  The defendant's naked assertions should not be credited. Indeed, the summary disposition of a motion to withdraw a guilty plea is appropriate where a defendant "fail[s] to present any affidavits or other evidentiary support for the naked assertions in the motion."  *Taylor*, 139 F.3d at 933; *Tolson*, F.Supp.2d at 19 (denial of defendant's motion to withdraw guilty plea where defendant did not file sworn affidavit containing basis for ineffective assistance claim) (*citing United States v. Horne*, 987 F.2d 833, 836 (D.C. Cir. 1993).  Absent any evidentiary support for his claim of ineffectiveness by counsel, the defendant's Motion must fail.

      26.    This claim should also be rejected by the Court because the defendant will be hard pressed to demonstrate that Mr. Wood was ineffective.  In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court applied to the guilty plea context the two-part test for determining ineffective assistance counsel that it had previously announced in *Strickland v. Washington,* 466 U.S. 668 (1984).  *See Hill,* 474 U.S. at 58; *United States v. Loughery,* 908 F.2d 1014, 1018 (D.C. Cir. 1990).  The *Hill-Strickland* test requires the defendant to show both that counsel's advice was not "within the range of competence demanded of attorneys in criminal cases," *Hill,* 474 U.S. at 56 (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)), and that as a result he was prejudiced, *i.e.* "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59.  It should be noted that the defendant retained Mr. Wood as his attorney and that Mr. Wood had represented him in prior cases.  As the Court is aware, Mr. Wood is a highly experienced, extremely capable attorney, who has made numerous appearances on behalf of defendant similarly situated with defendant. As stated above, Mr. Wood made multiple requests for additional time to enable the defense to have more time to assess the case, review the evidence and consider the Government's

plea offer. The Court granted the requests and set additional two status dates prior to the plea hearing. This procedural history, giving the defendant an additional month to consider the plea offer demonstrates that the defendant did not enter his guilty plea in a hasty manner. Moreover, during the Rule 11 colloquy, the Court addressed this issue by asking the defendant whether he had enough time to discuss the case and the plea with his attorney. The defendant did not inform the Court of any inadequacies by his attorney or of any desire for more time. The Court should reject the defendant's suggestion that he was rushed into entering his plea.

27.   Moreover, even if the Court were to assume, as the defendant now claims, that Mr. Wood did not conduct any investigation and failed to interview any witnesses, the defendant fails to show how Mr. Wood was ineffective or that the defendant was prejudiced by Mr. Wood's tactical decision. In his Motion, the defendant fails to provide any factual details of what Mr. Wood would have uncovered by additional investigation and interviews, or how such evidence would have made any difference to the defendant's case or his decision to plea guilty. Indeed, all the investigation and interviews in the world would not override the audio and video recordings of the defendant selling drugs. Having received discovery in this case, Mr. Wood provided the defendant with sage advice, as any competent attorney would, to accept the Government's plea offer and spare himself from an additional 53 months of incarceration under the Sentencing Guidelines that he potentially would receive were he to go to trial in this case,[4] as well as the

---

[4] The defendant's apparent criminal history score is four points, Category III, based on a misdemeanor conviction and the fact that he was on supervision at the time of the instant offense and had been released from prison less than two years prior to the offense. Under the Plea Agreement, the defendant's offense level is 29 based on 124 grams of crack and a three level reduction for early acceptance of responsibility. Under the Plea Agreement, the defendant's Guidelines range is 108 to 135 months of incarceration, with a 120-month mandatory minimum. Were the defendant to go to trial, his offense level would be 32, and his Guidelines range would

mandatory minimum sentence of 10 years he would receive for charges that were to be brought in Maryland based on his conduct at the time of his arrest.

  28. Because the defendant has no viable claim of Rule 11 error or violation of his constitutional rights, the defendant's Motion must rely solely on his claim of actual innocence. To successfully litigate his Motion based solely on actual innocence, the defendant's burden is exceedingly high. A motion to withdraw a guilty plea may be granted "on evidence of actual innocence alone only when that evidence is of the most compelling sort – for example, exculpatory DNA evidence or a newly discovered and credible alibi witness might, if proffered in a withdrawal motion, compel the Court to grant relief." *Tolson*, 372 F.Supp.2d at 25; *accord Cray*, 47 F.3d at 1208 (affirming lower court's denial of motion to withdraw guilty plea and stating that a "defendant who fails to show some error under Rule 11 has to shoulder an extremely heavy burden if he is ultimately to prevail."). The defendant has not even articulated what defense he has, or provided the Court, as he must, with affirmative evidence of his innocence. *See Tolson*, 372 F.Supp.2d at 25 (denial of defendant's motion to withdraw guilty plea where defendant did not file sworn affidavit containing substantial facts in support of actual innocence claim); *cf. West*, 392 F.3d at 457, n.4 (stating the court may deny a motion to withdraw a guilty plea without an evidentiary hearing where the defendant fails to offer substantial evidence that impugns the validity of the plea); *Hanson*, 339 F.3d at 989 (affirming court's denial of defendant's motion to withdraw guilty plea based on defendant's claim of entrapment not withstanding defendant's testimony and specific averments at evidentiary hearing). The Court

---

be 151 to 188 months in this case alone.

should discredit the defendant's claim of innocence because it is unsupported by any credible evidence.

29.   The defendant's newly found claim of innocence is also soured by his repeated admissions in this case.  There are numerous places in the Plea Agreement itself, signed by the defendant on September 29, 2006, in which he admits he distributed crack cocaine.  Twice in the Statement of Offense, also signed by the defendant on September 29, 2006, the defendant admitted he distributed crack cocaine.  At the Rule 11 colloquy, the defendant stood solemnly before the Court and reaffirmed he had signed the Plea Agreement and the Statement of Offense, that he had discussed both documents with his attorney, and that he understood what was contained therein.  Thereafter, the Court went carefully through the Plea Agreement and Statement of Offense with the defendant.  The defendant informed the Court that he understood the Plea Agreement and agreed with the Statement of Offense prior to the Court accepting his guilty plea.  Accordingly, in this Motion, the defendant says essentially that 1) he intentionally lied to the Court on September 29, 2006, but that 2) over four months later, he now wants something different, and 3) as a result, he is only now willing to tell the Court of his earlier lies.  Under such circumstances, the Court should reject the defendant's spurious claim of innocence.

WHEREFORE, for the reasons stated above, it is respectfully requested that the defendant's motion be denied.

                        Respectfully submitted,
                        JEFFREY A. TAYLOR
                        UNITED STATES ATTORNEY
                        Bar No. 451-058

                        _____/s/_____
   By:   PERHAM GORJI
                        ASSISTANT U.S. ATTORNEY
                        Delaware Bar No. 3737
                        Federal Major Crimes Section
                        555 4th Street, N.W.
                        Washington, D.C. 20530
                        (202) 353-8822
                        perham.gorji@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion has been served by first class mail upon counsel of record for the defendant, Harry Tun, Esquire, 400 Fifth Street, N.W., #300, Washington, D.C. 20001, this 12th day of February, 2007.

                        _____/s/_____
                        Assistant United States Attorney