## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | Criminal No. 06-208 (GK) |
| *v.* | : | |
| | : | |
| FRANK BERKELEY | : | |
| | : | |

_____

### DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW HIS PLEA

The Defendant Frank Berkeley (hereinafter "Berkeley"), by and through the undersigned counsel, respectfully replies to the government's opposition to defendant's motion to withdraw his plea. In support of this reply, the defendant states as follows:

### FACT STATED BY IN GOVERNMENT'S OPPOSITION WHEREIN THE CS CONTACTED THE DEFENDANT

1.      According to the government, "[o]n August 2, 2005, agents from the United Staes Drug Enforcement Administration ("DEA") and Metropolitan Police Department ("MPD") met with a Confidential Source (hereinafter referred to as the "CS"), regarding the purchase of approximately sixty-two (62) grams of crack cocaine from the defendant, Frank Berkeley. At approximately 1:30 p.m., *the CS placed a telephone call to the defendant's cellular telephone, telephone number (240) 603-8934, regarding the purchase for approximately 62 grams of cocaine,*" (emphasis added).

### THE DEFENDANT WAS ENTRAPPED TO SELL DRUGS

2.      According to *United States v. West*, 392 F.3d 450, 455 (D.C. Cir. 2004) (*quoting United States v. Hanson*, 339 F.3d 983, 988 (D.C. Cir. 2003)), the court adjudicating a motion to withdraw a guilty plea prior to sentencing must consider the following issues:

      a.      Whether the defendant has asserted a viable claim of innocence;

      b.      Whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and

      c.      Whether the guilty plea was somehow tainted.

*Id*. at 455.

## WHETHER THE DEFENDANT HAS ASSERTED A VIABLE CLAIM OF INNOCENCE?

3.      Mr. Berkeley submits that he has a viable claim of entrapment.  The defense of entrapment has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct."  *Mathews v. United states*, 485 U.S. 58, 63, 99 L.Ed. 2d 54, 1048 S. Ct. 883 (1988); See also *United States v. Evans*, 342 U.S. App. D.C. 189, 216 F.3d 80, 90(D.C. Cir. 2000).  When the defendant claims entrapment, he first bears the burden of showing  "that he was induced by the Government to commit a crime he otherwise would not have committed."  If the defendant is successful, "the burden is then shifts to the Government to prove the defendant is predisposed to commit the crime*." United States v. Glover*, 332 U.S. App. D.C. 74, 153 F.3d 749, 754 (D.C. Cir 1998).

4.      Mr. Berkeley's defense centers on the claim that he sold heroin to confidential informant (hereinafter referred to as "CI") because Mr. Berkeley was induced to sell the drugs.  The CI in this case is the grand father of Mr. Berkeley son.  Mr. Berkeley has no dealing with CI prior to the first sale.  It is under the cajoling and constant badgering of CI which led to believe that Mr. Berkeley may not have the chance to see his son as well as his girl friend that led to selling of the drugs to CI.

5.      Additionally, prior to the first sale, the CI demanded that Mr. Berkeley sell another ounce at a later date, and the threat was repeated on the prior to the second sale on

September 21, 2005. Mr. Berkeley claims that he made the second sale only because he was afraid not to. Mr. Berkeley submits that he never intended to sell drugs to any one prior to selling the drug to CI.

6.      In the case at bar, Mr. Berkeley has satisfy the inducement requirement because he did not sell the drugs to CI whom he has no dealing even after repeated solicitation. Only after the CI allude to the fact that he is not going to let Mr. Berkeley to see his son or his girl friend and started to interfere with his family, Mr. Berkeley relented. It has been held that "repeated government solicitation do not establish inducement unless the requests are coupled with persuasive overtures, or unless there is evidence of reluctance on the part the defendant's part demonstrating that the repetition of the requests may have moved an otherwise unwilling person to commit a criminal act. *United States v. Hanson*, 339 F.3d 983, 988 (D.C. Cir. 2003), *Glover* at 153 F. 3d at 754. In Mr. Berkeley matter at bar, he submits that both repeated government solicitation with persuasive overtures (i.e. repeated solicitation and CI abilities to interfere with Mr. Berkeley's ability to see the individuals he love) and evidence of reluctance on the part Mr. Berkeley's part demonstrating that the repetition of the requests may have moved an otherwise unwilling Mr. Berkeley to commit a criminal act. Id.

7.      Under Fed.R.Evid. 404(b)[1] evidence of a systematic campaign of threats and intimidation against other persons is admissible to show lack of criminal intent by a defendant who claims to have been illegally coerced. Normally, Rule 404(b) is used to show evidence of

---

[1]      Fed.R.Evid. 404(b) provides:
        Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

prior similar offenses committed by the defendant, and strict standards for admissibility protect the defendant from prejudice. *See, e. g., United States v. Urdiales*, 523 F.2d 1245 (5th Cir. 1975), cert. denied, 426 U.S. 920, 96 S. Ct. 2625, 49 L. Ed. 2d 373 (1976).   However, in Mr. Berkeley's case, he will seek to introduce evidence of the CI's scheme.  Mr. Berkeley's right to present a vigorous defense will require the admission of this proffered evidence. The fact that it referred exclusively to threats made by CI before and after the sales by Mr. Berkeley affects its weight, but not its admissibility.

8.      Mr. Berkeley was never advised, nor explained as to what investigation was done in his case.  In fact, Mr. Berkeley asserts that there was no investigation conducted in order to mount the proper defense for him by his prior counsel.  He further asserts that the prior counsel failed to investigate or even interview possible witnesses to the point that Mr. Berkeley did not receive effective assistance of counsel in his case.  Accordingly, Mr. Berkeley's claim of entrapment is a viable claim of innocence, and his prior counsel was ineffective for not investigating such a defense by explaining it to Mr. Berkeley or interview possible witness.

9.      The Supreme Court has admonished lower courts, because the "judicial scrutiny of counsel's performance must be highly deferential," (see *Strickland v. Washington,* 466 U.S. 668, 689, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Under the Strickland test, a convicted defendant "must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant." Id. at 476-77 (quoting Strickland, 466 U.S. at 688, 694).

10.      Under the first prong of *Strickland,* the proper standard for assessing an attorney's performance is that of *reasonably* effective assistance. *Id. See also McMann v. Richardson,* 397 U.S. 759, 25 L. Ed. 2d 763, 90 S. Ct. 1441 (1970) (holding that a guilty plea cannot be attacked

as based on inadequate legal advice unless counsel was not a *reasonably* competent attorney).  In the context of a guilty plea, the second prong of *Strickland* is a little more difficult to assess, *see Ostrander v. Green,* 46 F.3d 347 (4th Cir. 1995). To "prejudice" the defense, there must be a reasonable probability that the defendant would have insisted upon a trial, had he not received the ineffective assistance of his counsel. *Id.* (citing *Hill v. Lockhart,* 894 F.2d 1009 (8th Cir.) *(en banc), cert' denied,* 497 U.S. 1011, 111 L. Ed. 2d 767, 110 S. Ct. 3258 (1990) (applying the *Strickland* test to the context of a guilty plea)).

11.    Under the second prong of *Strickland*, there must be a reasonable probability that the defendant would have insisted upon a trial had he not received the ineffective assistance of his counsel, *see Ostrander v. Green,* 46 F.3d 347 (4th Cir. 1995). (citing *Hill v. Lockhart,* 894 F.2d 1009 (8th Cir.) *(en banc), cert' denied,* 497 U.S. 1011, 111 L. Ed. 2d 767, 110 S. Ct. 3258 **(1990)** (applying the *Strickland* test to the context of a guilty plea)).   Mr. Berkeley learned that prior counsel did not interview any of his witnesses and failed to investigate after he received discovery from the undersigned counsel.  Mr. Berkley told undersigned counsel that he was innocent of the charges and had a defense to the same.  Moreover, Mr. Berkeley stated that prior counsel did not investigate his case nor did he go over the discovery with him.  Accordingly, prior counsel was ineffective and ineffective assistance of counsel is a serious defect and a violation of the Sixth Amendment of the U.S. Constitution.

**WHETHER THE DELAY BETWEEN THE GUILTY PLEA AND THE MOTION TO WITHDRAW HAS SUBSTANTIALLY PREJUDICED THE GOVERNMENT'S ABILITY TO PROSECUTE THE CASE?**

12.    On July 19, 2006, Mr. Berkeley was arrested and charged with Possession with the Intent to Distribute Cocaine in violation of 21 U.S.C. Section 841(b)(B)(iii).  Subsequently, he was indicted on six counts of drug related charges.

13.    On September 29th, 2006, Mr. Berkeley entered a plea of guilty to one count of distribution of cocaine, which is Count V of the indictment.

14.    As part of the plea agreement, the government agreed to dismiss the other five counts and to limit the allocution at sentencing to six and a half years.

15.    On February 2, 2007, Mr. Berkeley filed a motion to withdraw his plea.  There is no argument from the government that this short delay causes prejudice in the government's ability to prosecute Mr. Berkeley.

### WHETHER THE GUILTY PLEA WAS SOMEHOW TAINTED?

16.    Mr. Berkeley with his defense of entrapment has met his burden and does not have to show that the Rule 11 inquiry was tainted. "The general standard to be applied (the request for leave to withdraw having come prior to sentence) is whether 'for any reason the granting of the privilege seems fair and just.'" *Kercheval v. United States*, 274 U.S. 220, 224, 47 S. Ct. 582, 583, 71 L. Ed. 1009 (1927); *Gearhart v. United States*, 106 U.S.App.D.C. 270, 273, 272 F.2d 499, 502 (1959). "If the request was made because [defendant] thought he had a defense, permission to withdraw "should be rather freely granted." *High v. United States,* 110 U.S.App.D.C. 25, 29, 288 F.2d 427, 430-431, *cert. denied,* 366 U.S. 923, 81 S. Ct. 1350, 6 L. Ed. 2d 383 (1961).

**WHEREFORE**, for the foregoing reasons and any that may be stated at any hearing on the motion, opposition and this reply, Mr. Berkeley respectfully requests that this Honorable Court grant his motion and withdraw his plea and request a hearing on this matter.

Respectfully submitted,

/s/ Harry Tun

Harry Tun DC#416262
400 Fifth Street, N.W., Suite 300
Washington, DC 20001
202-393-2882

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March 2007, a copy of the foregoing to be delivered by electronic e-mail to Perham Gorji, Assistant United States Attorney, Federal Major Crimes Section, 555 Fourth Street, N.W., Washington, D.C. 20530.

/s/ Harry Tun