UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-208 (GK) |
| v. | : | |
| FRANK BERKELEY, | : | VIOLATIONS: 21 U.S.C. §841(a)(1) |
| | : | and §841(b)(1)(A)(iii) |
| Defendant. | : | (Distribution of 50 Grams or More |
| | : | of Cocaine Base) |

### GOVERNMENT'S SURREPLY TO
### DEFENDANT'S MOTION TO WITHDRAW PLEA

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia (the "United States" or "Government"), respectfully submits this response in opposition to the defendant's motion to withdraw his guilty plea (the "Motion"). In support of this opposition, the United States relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this matter:

### Background

1.   On August 2, 2005, agents from the United States Drug Enforcement Administration ("DEA") and the Metropolitan Police Department ("MPD") met with a Confidential Source (hereafter referred to as the "CS"), regarding the purchase of approximately sixty-two (62) grams of crack cocaine from the defendant, Frank Berkeley. At approximately 1:30 p.m., the CS placed a telephone call to the defendant's cellular telephone, telephone number (240) 603-8934, regarding the purchase of approximately 62 grams of cocaine. The defendant informed the CS that the price would be seventeen hundred ($1700.00), plus two hundred

($200.00) owed from a prior debt. At approximately 1:40 p.m., agents followed the CS to the 1000 block of 44th Street, N.E., Washington, D.C., the pre-determined meet location. At approximately 1:35 p.m., the defendant arrived in the 1000 block of 44th Street, N.E., Washington, D.C., in a multi-colored Chevrolet Caprice bearing Maryland license plate number 4AYY65. Captured on video recording, the defendant exited the driver's side and entered the CS's vehicle, where he sat in the front passenger seat and engaged in a conversation about the CS buying between an eighth of a kilo (1/8) and a half of a kilo (½). The defendant handed the CS a clear plastic wrap containing approximately 62 grams of suspected crack cocaine, in exchange for nineteen hundred ($1,900.00) dollars of pre-recorded DEA funds. The conversation between the CS and the defendant inside the CS's vehicle was recorded. The defendant exited the CS's vehicle, and both parties drove away. The suspected crack cocaine was seized by law enforcement officers and later submitted for chemical analysis. A chemical analysis of the suspected crack cocaine conducted by the DEA Mid-Atlantic Laboratory confirmed that the substance provided by the defendant to the CS was cocaine base, also known as crack cocaine, and weighed 62.2 grams.

      2.      On September 21, 2005, at approximately 11:35 a.m., the defendant contacted the CS via telephone regarding the purchase of 62 grams of crack cocaine. The defendant advised the CS he would be there (referring to the 1700 block of Benning Road, N.E., Washington, D.C.) by 12:00 p.m. At approximately 12:10 p.m., agents observed the defendant arrive at the 1700 block of Benning Road, N.E., Washington, D.C., in a multi-colored Chevrolet two-door Oldsmobile with a rag top, bearing Maryland license plate MNS-216. The defendant exited the driver's side and entered the CS's vehicle and sat in the right rear passenger seat and engaged in

a conversation. The CS introduced the defendant to an undercover agent (hereafter referred to as the "UC") and they shook hands. The defendant advised the CS to drive around the parking lot and the defendant handed the UC a clear plastic wrap containing approximately 62 grams of suspected crack cocaine, in exchange for seventeen hundred ($1,700.00) dollars. The conversation between the CS, UC and the defendant inside the CS's vehicle was recorded. Moments later, as seen on video recording, the defendant exited the CS's vehicle, walked back to his vehicle, and left the area. The suspected crack cocaine was seized by law enforcement officers and was later submitted for chemical analysis. A chemical analysis of the suspected crack cocaine conducted by the DEA Mid-Atlantic Laboratory confirmed that the substance provided by the defendant to the UC was cocaine base, also known as crack cocaine, and weighed approximately 61.8 grams.

3.     As a result of the above-described drug transactions, the defendant was indicted on July 11, 2006, on two counts of Unlawful Distribution of 50 Grams or More of Cocaine Base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii). A warrant was issued for his arrest that same day.

4.     The defendant was arrested on July 19, 2006, outside his residence, at 7002 Annapolis Road, Landover Hills, Maryland, as the defendant approached and began to enter a Dodge Durango bearing Maryland license plate number 655M797, which is registered to the defendant's father, James Siebert. During the search of the defendant incident to arrest, agents seized approximately 31 grams of suspected crack cocaine from the right pocket of the defendant's cargo shorts. Agents also seized a handgun located on the front floorboard of the passenger side of the Dodge Durango inside a canvas Adidas bag. The handgun was a Taurus

9mm with a round in the chamber and an additional 12 rounds in the magazine. Additionally, agents seized $91,980 in U.S. currency, wrapped with rubber bands, from the front passenger's seat in a canvas bag. A blue and black Sprint Sanyo MM-7500 cellular telephone, telephone number (910) 795-7627, was also recovered from the front passenger side of the Dodge Durango. According to the defendant's father, the defendant had sole possession of the 1999 Dodge Durango since mid-June 2006.

    5.    On August 3, 2006, attorney Douglas Wood entered his appearance on behalf of the defendant, who had previously retained Mr. Wood. On that same date, the Court granted the defendant's request for additional time to review discovery and evaluate the case. The Court set a status hearing for that purpose on August 29, 2006, on which date, the defense again requested additional time to consider the case and assess the Government's plea offer. The Court set a subsequent status hearing for September 14, 2006.

    6.    The Government provided the defense with a copy of the plea agreement and a written statement of the offense on September 12, 2006 (hereinafter, the "Plea Agreement" and "Statement of Offense," respectively). At the status hearing on September 14, 2006, the defendant requested a plea hearing. The Court set a plea hearing for September 29, 2006.

    7.    On September 29, 2006, pursuant to the Plea Agreement, the defendant entered a plea of guilty in the above captioned case to one count of Unlawful Distribution of 50 Grams or More of Cocaine Base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii).

    8.    As set out in the Plea Agreement, pursuant to Title 21, United States Code, Section 841(b)(1)(A)(iii), the charge to which the defendant pled guilty carries a penalty of a

term of imprisonment not less than ten (10) years and not more than life, a fine not to exceed $4,000,000.00, and, a term of supervised release of at least five (5) years.  The defendant was informed that he was not eligible for a parole, probation, or a suspended sentence, and that a special fee of $100 would be imposed against him pursuant to Title 18, United States Code, Section 3013.

9.    The defendant agreed that, pursuant to Section 1B1.3 of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), he is accountable for selling approximately 62.2 grams of cocaine base, also known as crack, on August 2, 2005, and selling approximately 61.8 grams of cocaine base on September 21, 2005, and that the above mentioned amounts (totaling 124 grams) represent the total amount involved in his relevant criminal conduct, including amounts he distributed or possessed with intent to distribute.

10.    In consideration of the defendant's plea to the above offense, the Government agreed to dismiss the remaining count in the indictment, at the time of sentencing.  Furthermore, the Government secured letters of declination from the Maryland State's Attorney's Office and the United States Attorney's Office for the District of Maryland whereby the Maryland State's Attorney's Office and the United States Attorney's Office for the District of Maryland agreed respectively not to prosecute the defendant for the illegal conduct occurring on July 19, 2006, at the time of his arrest, concerning the seizure of approximately 30 grams of cocaine base from the defendant's person, as well as a firearm and approximately $91,980 from inside a Dodge Durango, bearing Maryland license plate number 655M797, which vehicle the defendant was approaching and about to enter at the time of his arrest.

11.    The Government also agreed, assuming the defendant clearly demonstrated

acceptance of responsibility to the satisfaction of the Government through his allocution and subsequent conduct prior to the imposition of sentence, that a 2-level reduction would be appropriate, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant accepted responsibility as described in the previous sentence, the Government agreed that an additional 1-level reduction would be appropriate, pursuant to U.S.S.G. § 3E1.1(b).

12. The parties agreed that a sentence within the applicable Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, Section 3553(a). However, the parties agreed that either party may seek a sentence outside of the applicable Guidelines Range and suggest that the Court consider a sentence outside the applicable Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

13. On October 5, 2006, the defendant filed a motion to substitute counsel in this case. The Court granted the defendant's request; Douglas Wood's motion to withdraw as counsel was granted; and attorney Harry Tun entered his appearance on behalf of the defendant on October 10, 2006. The Court also subsequently reset the sentencing hearing to February 15, 2007.

14. On February 2, 2007, prior to sentencing in this case, the defendant filed its Motion requesting to withdraw his guilty plea because, according to him, he is innocent of the charges, he was unduly pressured by the parties involved in the case to take the plea offer, and he was ineffectively assisted by prior counsel, Douglas Wood, who, according to the defendant, failed to conduct any investigation, interview possible witnesses, and review discovery with him. The government filed its opposition to the motion on February 12, 2007.

15.     As a result of the defendant's filing of his Motion, the court vacated the sentencing hearing date and set a status hearing for February 14, 2007, at 10:15 a.m.  The Court granted a further continuance as a result of inclement weather, and the status was held on February 15, 2007, and a hearing on the Motion was set for March 12, 2006.  Before that date, defense counsel filed a motion to continue, and the hearing was reset for April 12, 2006, which was reset once again as a result of defense counsel request for a continuance.  Because of defense counsel Harry Tun's schedule, the hearing could not be reset until June 21, 2006.

16.     On that date, the Court again continued the hearing, in part because the defense was not ready to proceed and had once again moved for a continuance.  The Court ordered the defendant to submit an affidavit swearing to the allegations he believed supported the Motion and to resubmit a pleading that specifically addressed the defendant's position.

17.     On June 27, 2007, defense counsel filed defendant's affidavit and revised pleading, both of which make clear that the defense has now modified its position and seeks to advance an argument that the confidential informant placed defendant under duress, causing defendant to be "afraid for [his] life as well [sic] other people closed [sic] to [him]."  Berkeley Affidavit ¶9.

18.     In response, the government incorporates the arguments advanced in its initial opposition, filed on February 12, 2007.  The government further submits the following points and authorities as may be cited at a hearing on the matter.

19.     A defendant may assert duress as a defense only if he shows that he acted under the threat of imminent death or serious bodily harm.  United States v. Jenrette, 744 F.2d 817, 820 (D.C. Cir. 1984) (citing United States v. Bailey, 444 U.S. 394, 409 (1980)).  If the defendant had

any reasonable, legal alternative to committing the crime, a duress defense cannot be maintained. Id. at 820-21; see also United States v. Rawlings, 982 F.2d 590, 593 (D.C. Cir. 1993). Under the first prong, a threat of future harm or a threat made before the commission of an illegal act generally is not sufficient because if the threat is not immediate, there will be ample opportunity to avoid the illegal act. Id. at n.6. The duress claim in Jenrette failed because there was no imminent threat prior to the defendant accepting a bribe after considering the opportunity for two days. Id. See also Rawlings, 982 F.2d at 591-92 (a theoretical and unsubstantiated threat from a narcotics supplier against defendant's kin did not satisfy the imminent harm prong). Under the second prong, a defendant cannot claim duress when he had, but passed up, an opportunity to seek the aid of law enforcement officials. Rawlings, 982 F.2d at 593; United States v. Gaviria, 116 F.3d 1498, 1531 (D.C. Cir. 1997) (failure to inform anyone of a threat to defendant's daughter during a thirteen-month drug conspiracy deemed insufficient).

20.     The defendant has the burden of establishing a duress claim. Failure to argue that there was no reasonable, legal alternative will preclude a successful duress claim. See, e.g., Jenrette, 744 F.2d at 821 (congressman failed to argue that there was no reasonable, legal alternative to accepting the bribe money).[1]

---

[1] At the most recent status hearing, defense counsel stated that the defense will present two witnesses, including the defendant, at the hearing. The government anticipates calling between four to five witnesses, including three law enforcement officers and defendant's former attorney, Douglas Wood, Esquire. As a result, the government anticipates that the hearing will last approximately 4 hours.

8

WHEREFORE, for the reasons stated above, it is respectfully requested that the defendant's motion be denied after a hearing on the matter.

                                                  Respectfully submitted,
                                                  JEFFREY A. TAYLOR
                                                  UNITED STATES ATTORNEY
                                                  Bar No. 451-058

                                                  _____/s/_____

By:    PERHAM GORJI
          ASSISTANT U.S. ATTORNEY
          Delaware Bar No. 3737
          Federal Major Crimes Section
          555 4th Street, N.W.
          Washington, D.C. 20530
          (202) 514-5060
          perham.gorji@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion has been served by first class mail upon counsel of record for the defendant, Harry Tun, Esquire, 400 Fifth Street, N.W., #300, Washington, D.C. 20001, this 12th day of July, 2007.

                                      _____/s/_____
                                      Assistant United States Attorney