### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 06-208 (GK)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **FRANK BERKELEY,** | : | **VIOLATIONS: 21 U.S.C. §841(a)(1)** |
| | : | **and §841(b)(1)(A)(iii)** |
| **Defendant.** | : | **(Distribution of 50 Grams or More** |
| | : | **of Cocaine Base)** |

### GOVERNMENT'S POST-HEARING MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW PLEA

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia (the "United States" or "Government"), respectfully submits this supplemental, post-hearing memorandum in opposition to the defendant's motion to withdraw his guilty plea (the "Motion"), a hearing on the Motion having been held on August 9, 2007.

### Background

Defendant Frank Berkeley ("Defendant") pled guilty on September 29, 2006, and filed his motion to withdraw his guilty plea on February 2, 2007, prior to sentencing. A hearing on the Motion was held on August 9, 2007. At the hearing, the defense presented Defendant's testimony and the testimony of Ayesha McKeithan, who is Defendant's girlfriend and the informant's daughter. The Government presented the testimony of attorney Douglas Wood ("Doug Wood"), as well as Sergeant Curtis Sloan of the Metropolitan Police Department. Government Exhibit No. 4 (a transcription of recorded conversations and transactions from this case), No. 10 (the "Statement of Offense" from this case), and No. 12 (a statement of probable

cause from an April 2000 case) were admitted in evidence.

## Legal Standard

A defendant may withdraw a guilty plea prior to sentencing if he "can show a fair and just reason for requesting withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The Supreme Court's general test for the validity of the entering of a guilty plea is whether the plea represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985).[1] It is the defendant's burden to prove there are valid grounds for withdrawal. See Fed. R. Crim Pro. 11(d)(2)(B); United States v. Rogers, 387 F.3d 925, 932 (7th Cir. 2004); United States v. Michaelson, 552 F.2d 472 (2d Cir. 1977).

The D.C. Circuit has recently reiterated this jurisdiction's established rule that a court adjudicating a motion to withdraw a guilty plea prior to sentencing must consider: "(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted." United States v. Curry, ___ F.3d ___, 2007 WL 2176135 *3 (D.C. Cir. 2007); accord United States v. West, 392 F.3d 450, 455 (D.C. Cir. 2004) (quoting United States v. Hanson, 339 F.3d 983, 988 (D.C. Cir. 2003)).

---

[1]    It is a fundamental component of due process that a defendant who waives his constitutional rights in entering a plea of guilt must do so voluntarily, knowingly, and intelligently. United States v. Brady, 397 U.S. 742, 747-48 (1970). To satisfy this threshold, a waiver must be "done with sufficient awareness of the relevant circumstances and likely consequences." Id. Nevertheless, certain consequences of a guilty plea are "collateral" rather than "direct" and need not be explained to a defendant in order to ensure that a plea is valid. See United States v. Sambro, 454 F.2d 918, 922 (D.C. Cir. 1971) (citing Brady; holding deportation to be a collateral consequence of conviction).

Of these three factors, the third factor is the most important, see West, 392 F.3d at 455; United States v. Horne, 987 F.2d 833, 837 (D.C. Cir. 1993); United States v. Tolson, 372 F. Supp.2d 1, 9 (D.D.C. 2005), and requires a showing that the district court's taking of the guilty plea either failed to conform to the requirements of Federal Rule of Criminal Procedure 11, see West, 392 F.3d at 458, or was in some other sense constitutionally deficient.  See United States v. Taylor, 139 F.3d 924, 929 (D.C. Cir. 1998); United States v. Ford, 993 F.2d 249, 251 (D.C. Cir. 1993).  While the Court of Appeals has often balanced the three factors, in fact "none of [the D.C. Circuit's] cases would have been decided differently if the only inquiry undertaken were whether the defendant's guilty plea was taken in compliance with Rule 11."  United States v. Cray, 47 F.3d 1203, 1207 (D.C. Cir. 1995) (citations omitted).  Indeed, in this Circuit, the examination of the first factor – actual innocence/legally cognizable defense – is only evaluated after the Court has determined whether the defendant alleged a defect in the plea proceeding sufficient to justify granting a motion to withdraw the plea.  See id. at 1206; Tolson, 372 F.Supp.2d at 9.

A defendant "who fails to show some error under Rule 11 has to shoulder an extremely heavy burden if he is to ultimately prevail" in his withdrawal motion.  Cray, 47 F.3d at 1208. This is so, because the judicial system regards the withdrawal of guilty pleas as "inherently in derogation of the public interest in finality," Horne, 987 F.2d at 837, which "undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice."  Hill v. Lockhart, 474 U.S. 52, 58 (1985).

To be sure, a defendant seeking to withdraw his or her guilty plea is also required to

"make out a credible claim of legal innocence as a threshold matter." Cray, 47 F.3d at 1206.

However, "where the movant for withdrawal fails to demonstrate some constitutional or

procedural error in the taking of his or her plea, circumstances will often justify a court's denial

of a motion to withdraw that plea even where the movant makes out a legally cognizable defense

to the charges." Tolson, 372 F.Supp.2d at 9.  This is so, because "[w]ere mere assertion of legal

innocence always a sufficient condition for withdrawal," as the Court of Appeals reasoned in

United States v. Barker, 514 F.2d 208, 218-21 (D.C. Cir. 1975):

> [W]ithdrawal would effectively be an automatic right.  There are few if any
> criminal cases where the defendant cannot devise some theory or story which, if
> believed by a jury, would result in his aquittal ....  Were withdrawal automatic in
> every case where the defendant decided to alter his tactics and present his theory
> of the case to the jury, the guilty plea would become a mere gesture, a temporary
> and meaningless formality reversible at the defendant's whim.  In fact, however, a
> guilty plea is no such trifle, but "a grave and solemn act," which is "accepted with
> care and discernment."

Id., at 221 (quoting Brady v. United States, 397 U.S. 742 (1970)).  For that reason, it has been

generally observed that withdrawal motions "will be granted on evidence of actual innocence

alone only when that evidence is of the most compelling sort – for example, exculpatory DNA

evidence or a newly discovered and credible alibi witness might, if proffered in a withdrawal

motion, compel the Court to grant relief." Tolson, 372 F.Supp.2d at 25 (emphasis added); accord

Cray, 47 F.3d at 1209 (affirming denial of defendant's motion to withdraw guilty plea where

there was no error in Rule 11 colloquy and defendant failed to advance an objectively reasonable

argument for his innocence other than asserting a general denial of guilt).   Accordingly, a weak

defense that is unlikely to prevail at trial will not meet the "fair and just" standard permitting

withdrawal of a plea.  United States v. Curry, __ F.3d __, 2007 WL 2176135 *4, 5-6 (D.C. Cir.

2007) (citing United States v. Hanson, 339 F.3d 983, 988 (D.C. Cir. 2003)).

4

As shown below, Defendant has failed to establish any constitutional deficiency in the entering of his guilty plea and has failed to make out a viable claim of actual innocence or legal defense. As a result, Defendant's Motion is without merit and should be denied.

## Analysis

### I.    The Guilty Plea Was Not Tainted by Defect.

Defendant does not allege any shortcomings in the Court's Rule 11 colloquy at the plea proceeding. Rather, Defendant maintains that his plea was constitutionally deficient for the following reasons: first, according to Defendant, he was pressured into entering his plea; second, according to the defense, he received ineffective assistance from his former attorney.

### A.    Defendant Was Not Coerced Into Entering His Plea.

With respect to the first reason, Defendant claimed in his Motion and subsequent pleadings that he was unduly pressured by the Government. The Government responded to this false assertion in its Opposition (Docket No. 24) and reincorporates, without repeating, the same arguments here.

At the hearing, Defendant also claimed that he was pressured into entering his plea by his former attorney, Doug Wood. According to Defendant, Doug Wood was so angry in the cellblock moments before the plea hearing that Defendant became "scared" and entered his plea out of fear (8/9/07 Tr. 26-27).[2] Defendant's assertion is inconsistent with his longterm relationship with Doug Wood and is contradicted by the transcript from the plea proceeding. As the Court is aware, Mr. Wood is a highly experienced, extremely capable attorney, who has made

---

[2]    "Tr." preceded by a date and followed by a page number or numbers refers to the transcript of the hearing in this case, on the date and at the page(s) indicated.

numerous appearances on behalf of defendants similarly facing drug distribution related charges carrying potentially weighty sentences.  It should be noted that Defendant retained Mr. Wood as his attorney (id. at 113), and that Mr. Wood had represented him in prior cases, obtaining favorable results for Defendant in the past, including a case which went to trial (id. at 24-25, 111-13).  In this case, Mr. Wood made multiple requests for additional time to enable Defendant to have more time to assess his case, review the evidence and consider the Government's plea offer. The Court granted the requests and set two additional status dates prior to the plea hearing.  This procedural history, giving Defendant an additional month to consider the plea offer, demonstrates that Defendant did not enter his guilty plea in a hasty manner.

More importantly, the Court completely addressed the voluntariness of Defendant's decision to plea guilty during the Rule 11 colloquy on September 29, 2006.  The Court asked Defendant numerous questions on the issue of voluntariness, and Defendant, under oath, made no mention that he was unduly pressured (9/29/06 Tr. 15, 23).  The Court asked Defendant whether he had enough time to discuss the case and the plea with his attorney, and Defendant did not inform the Court of any inadequacies by his attorney or of any desire for more time (id.). Defendant stated under oath that he was satisfied with Doug Wood (id. at 6).  He also stated that he understood when the Court also advised him that he did not need to feel rushed in pleading that day (id. at 15).

Defendant's argument that he was pressured into entering his guilty plea contradicts his sworn statements to the Court at the plea hearing.  In doing so, Defendant says essentially that 1) he intentionally lied to the Court on September 29, 2006, but that 2) after pleading guilty, he realized he is not comfortable with a minimum sentence of ten years imprisonment, and 3) as a

result, he is only now willing to tell the Court of his earlier lies.  The Court should reject

Defendant's suggestion that he was rushed or pressured into entering his plea, or any of his other

assertions that contradict his sworn statements at the plea proceeding.

   B.  <u>Doug Wood was not Constitutionally Ineffective.</u>

   The second reason Defendant advances in hopes of convincing the Court that his plea was

constitutionally deficient is his claim that Doug Wood was constitutionally ineffective.  As the

hearing showed, Defendant was not deprived of effective legal representation guaranteed by the

Sixth Amendment of the Constitution.

   In <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985), the Supreme Court applied to the guilty plea

context the two-part test for determining ineffective assistance counsel that it had previously

announced in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>See</u> <u>Hill</u>, 474 U.S. at 58.  The

<u>Hill-Strickland</u> test requires the defendant to show both that counsel's advice was not "within the

range of competence demanded of attorneys in criminal cases," <u>id.</u> at 56, and that as a result he

was prejudiced, i.e., that "there is a reasonable probability that, but for counsel's errors, he would

not have pleaded guilty and would have insisted on going to trial."  <u>Id.</u> at 59.  Drawing upon <u>Hill</u>,

the Court of Appeals in this Circuit has held that "[n]o prejudice results from a lawyer's not

looking into a potential defense unless it 'likely would have succeeded at trial.'"  <u>Holland v.</u>

<u>United States</u>, 117 F.3d 589, 595 (D.C. 1997) (finding counsel was not constitutionally

ineffective where counsel allegedly failed to conduct a reasonable investigation into an

entrapment defense)  (quoting <u>Hill</u>, 474 U.S. at 59).[3]

---

    [3]  In deciding whether Defendant received ineffective assistance of counsel, this Court must decide whether Defendant's version of events is credible.  <u>See</u>, <u>e.g.</u>, <u>United States v. Curry</u>, __ F.3d __, 2007 WL 2176135 *___ (D.C. Cir. 2007); <u>United States v. Del Rosario</u>, 902

In this case, the defense alleges the following grounds for its claim of ineffective assistance of counsel. According to the defense, Doug Wood did not review discovery with Defendant (Affidavit ¶ 4); he did not investigate the case (Affidavit ¶ 5); he did not interview any witnesses (Docket No. 23, ¶ 18; Docket No. 26, ¶ 8, ¶ 11; Docket No. 34, ¶ 8); he failed to consider facts that supported an alleged defense of entrapment and duress (8/9/07 Tr. 20, 65); he advised Defendant that he would be sentenced to no more than 120 months (Affidavit ¶ 14); he advised Defendant that it was highly unlikely that he would be deported (Affidavit ¶ 15); he advised Defendant that, once sentenced, he could receive credit, and thus serve less prison time, by completing a drug treatment program offered by the Bureau of Prisons (8/9/07 Tr. 131-32); and he had a conflict of interest in representing Defendant (id. at 127-29). These claims, all of which lack merit, are addressed below.

1.    Doug Wood Reviewed Discovery with Defendant.

At the hearing, the evidence showed that Doug Wood visited Defendant approximately

---

F.2d 55, 58 (holding that counsel's failure to advise defendant of possibility of deportation in advance of guilty plea did not constitute ineffective assistance of counsel, and applying deferential standard of review to district court's finding that defendant's claim of innocence was not credible); United States v. Whalen, 976 F.2d 1346, 1347-48 (10th Cir. 1992) (ineffective assistance of counsel claim alleging counsel did not investigate entrapment defense). To the extent Defendant's testimony was contradicted by Doug Wood's testimony at the hearing on August 9, 2007, the Government respectfully submits that counsel's testimony should be credited. Indeed, Defendant's testimony at the hearing on the Motion contradicted many of his sworn statements from the plea hearing. For example, at the plea hearing, Defendant stated that he was satisfied with Doug Wood (id. at 6), that he was not rushed or pressured into pleading that day (id. at 15, 23), and that no one had told him what his sentence would be (id. at 23). In addition, at the hearing on the Motion, defendant contradicted his sworn affidavit by admitting that Doug Wood informed him what the court would "most likely" give him, rather than assuring him that he would get only the minimum sentence of 120 months imprisonment (compare 8/9/07 Tr. 53 with Affidavit ¶ 14). Defendant's allegation also contradicts his testimony at the hearing on the Motion that he understood that the Court would consider his Sentencing Guidelines range (8/9/07 Tr. 52).

three times while Defendant was incarcerated, and saw him another time before Defendant's

detention hearing (8/9/07 Tr. 118).  Doug Wood spent approximately 30 to 40 minutes with

Defendant each time (id.), and reviewed the discovery materials with Defendant, including

watching video tapes and listening to audio recordings of the transactions, as well as reviewing

transcripts of the telephone conversations that preceded the sales (id.).  Doug Wood reviewed

discovery with Defendant's family as well (id. at 119).  He also spoke with Ayesha McKeithan,

Defendant's girlfriend, who was the only person Defendant identified at the hearing whom

Defendant believed Doug Wood should have interviewed (id. at 101, 119).  Even Ms. McKeithan

testified that she saw video footage of Defendant engaging in the drug transactions (id. at 102-

04).  Thus, Doug Wood spent sufficient time reviewing discovery with Defendant, as well as his

family, to enable Defendant to assess accurately that the Government would be able to prove,

beyond a reasonable doubt, that Defendant sold drugs on August 2, 2005, and again on

September 21, 2005.

       2.     There Was No Need to Conduct Further Investigation.

Given the compelling nature of the evidence, and Defendant's response after reviewing

the discovery, Doug Wood had no reason to conduct further investigation.  Doug Wood and

Defendant knew who the confidential informant was after they reviewed discovery, well before

Defendant pled guilty (8/9/07 Tr. 36, 50, 120-21).  Doug Wood testified credibly that Defendant

never mentioned that there was any problem between Defendant and the confidential informant

(id. at 122-23, 146).   Both Doug Wood and Defendant were disappointed when they found out

that the father of Defendant's girlfriend turned Defendant in, but Defendant never mentioned that

the informant had pressured Defendant into selling drugs to him, or that he ever sent Defendant a

threatening letter (id. at 121-23).  Thus Doug Wood had no reason to believe that Defendant had

been entrapped or that he had sold the drugs under duress.  Given the strength of the

Government's evidence, and the lack of information concerning any viable defense, Doug Wood

had no additional avenues to investigate on behalf of his client.  The alleged failure by Doug

Wood to investigate therefore provides no basis for a claim of ineffective assistance of counsel in

this case.  See  Holland v. United States, 117 F.3d 589, 595 (D.C. 1997) (finding counsel was not

constitutionally ineffective where counsel allegedly failed to conduct a investigation into an

entrapment defense, holding "[n]o prejudice results from a lawyer's not looking into a potential

defense unless it 'likely would have succeeded at trial'" (quoting Hill, 474 U.S. at 59)); accord

United States v. Gwyn, 481 F.3d 849, 855 (D.C. 2007).

       3.      <u>There Was No Basis for Advising Defendant of Any Defense</u>.

       Doug Wood did not advise Defendant about a potential defense (neither of entrapment

nor duress) because, as explained above, Defendant provided Mr. Wood with no reason to

suspect that Defendant was pressured or threatened.  Nonetheless, even if this Court were to

credit Defendant's testimony that he told Mr. Wood about the threatening letter, Doug Wood

explained, and the Government showed at the hearing, that such defense was not viable given 1)

the overwhelming amount of evidence concerning Defendant's predisposition to sell drugs, 2) the

lack of imminent danger presented by the alleged threat, and 3) Defendant's failure to resist

through law abiding means.  Therefore, the lack of advice concerning any such defense did not

amount to ineffective assistance of counsel.  See Curry, __ F.3d __, 2007 WL 2176135 *6

("where the alleged error of counsel is a failure to advise the defendant of a potential affirmative

defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on

whether the affirmative defense likely would have succeeded at trial") (citing <u>Hill</u>, 474 U.S. at 59).

>    4.    <u>Doug Wood Met with All Known Witnesses.</u>

At the hearing, Defendant identified Ayesha McKeithan as the only person Doug Wood should have interviewed in furtherance of Defendant's case (8/9/07 Tr. 66).  However, the testimony at the hearing confirmed that Doug Wood did in fact speak with Ms. McKeithan at his office, on at least two occasions (<u>id.</u> at 101-102, 119, 123-24).  Indeed, Ms. McKeithan brought Doug Wood a photograph of her father after she became aware that her father was the informant who purchased drugs from Defendant (<u>id.</u> at 101).  At no point did Ms. McKeithan inform Doug Wood that her father had pressured Defendant or threatened him in any way (<u>id.</u> at 123).  At no point did she mention that her father had once given Defendant a letter (<u>id.</u>).  Defendant's claim of ineffective assistance on this basis therefore has no merit.

>    5.    <u>Defendant Was Properly Informed of the Potential Sentence.</u>

The advice Doug Wood gave Defendant regarding the amount of time to which he could be sentenced was proper and provides no basis for a finding of ineffective assistance of counsel. The Rule 11 colloquy makes clear that Defendant was appropriately advised of his potential sentencing range, both statutorily and under the United States Sentencing Guidelines (9/29/06 Tr. 14, 18-19).  Doug Wood had also previously explained to Defendant that he could get credit for good time served in prison, which would reduce a ten year sentence to approximately eight and a half years of actual time in jail.  Defendant has not shown this advice to be inaccurate. Moreover, there was no credible evidence that Doug Wood made any promises to Defendant regarding what his actual sentence would be and how much time Defendant would be required to

serve.  At the plea hearing, for example, Defendant stated under oath that no one told him what

the sentence would be (9/29/06 Tr. 23); and at the hearing on the Motion, Defendant conceded

that Doug Wood merely informed him that "most likely [the Court] would not give [him a] life

sentence"  (8/9/07 Tr. 53 ).  Doug Wood's advice that Defendant "most likely" would not get "a

life sentence" does not amount to ineffective assistance of counsel.

      6.    <u>Defendant Was Properly Informed That He Could Be Deported.</u>

Similarly, with respect to the issue of deportation, the Rule 11 colloquy makes clear that

Defendant was properly advised of the potential consequence of deportation (9/29/06 Tr. 5-6).

Defendant asserts that prior to the plea hearing, Doug Wood informed him that deportation was

highly unlikely (Affidavit ¶ 15).  Defendant has provided no evidence that his deportation is

likely, let alone that there is an INS detainer lodged against him.  At the time he pled guilty,

Defendant was aware that his guilty plea could result in his being deported (9/29/06 Tr. 5-6).

Counsel's advise therefore did not amount to ineffective assistance of counsel.  <u>United States v.</u>

<u>Del Rosario</u>, 902 F.2d 55, 59 (D.C. 1990) (counsel's failure to advise a defendant of the

collateral consequences of a plea of guilty affecting the possibility of deportation of the

defendant does not constitute ineffective assistance of counsel); <u>United States v. Sambro</u>, 454

F.2d 918, 921-22 (D.C. Cir. 1971) (finding no basis for withdrawal of guilty plea prior to

sentencing where defense counsel affirmatively misinformed the defendant about the

consequences of deportation resulting from the plea).[4]

---

[4]    Many local jurisdictions, including the District of Columbia, have enacted legislation specifically requiring that aliens be fully advised of immigration and naturalization consequences before entering a guilty plea.  <u>See</u> <u>Daramy v. United States</u>, 750 A.2d 552, 555-56 (D.C. 2000) (explaining that District of Columbia's alien sentencing statute, D.C. Code 16-713, was a reaction to federal precedent, citing <u>Sambro</u>, that precluded withdrawal of guilty plead where alien defendants had not been fully informed of consequences of deportation).  Such local

Although federal law does not require that a defendant be informed of the consequences of deportation before entering a guilty plea, <u>Del Rosario</u>, 902 F.2d at 59, the D.C. Circuit Court of Appeals has debated the circumstances under which affirmative misinformation about such consequences could require withdrawal of a plea.  <u>Compare</u> <u>United States v. Sambro</u>, 454 F.2d 918, 921 (D.C. Cir. 1971)  (affirming district court's denial of motion to withdraw guilty plea where defense counsel gave erroneous advice about the consequences of deportation resulting from a guilty plea) <u>with</u> <u>United States v. Russell</u>, 686 F.2d 35, 41 (D.C. Cir. 1982) (vacating guilty plea where prosecutor falsely represented that the guilty plea could not result in deportation).  In <u>Russell</u>, the defendant pled guilty to the lesser offense, having been misinformed by the prosecutor that a plea to a misdemeanor offense could not result in deportation.  <u>Russell</u>, 686 F.2d at 41.  Unlike <u>Russell</u>, Defendant here was not induced into entering his guilty plea by a mistatement of law from the prosecutor.  More importantly, this case is closer to <u>Sambro</u> than <u>Russell</u> because Defendant here pled to the same lead offense he would have faced had he gone to trial; as a result, Defendant cannot argue that he entered his guilty plea with the specific belief that entering a plea, rather than facing trial, would enable him to avoid deportation.  The Court need not resolve which case, <u>Sambro</u> or <u>Russell</u>, governs here, however, because Defendant has not demonstrated that Doug Wood's advice was erroneous.

      7.      **Defendant Did Not Establish That He Is Ineligible for a Reduced Sentence under the Bureau of Prison's Drug Treatment Program, or That He Was Prejudice by Counsel's Advice.**

One issue that arose at the hearing on August 9, 2007, was that Doug Wood testified that he advised his client that, once sentenced, he could be placed in the drug treatment program

legislation is not binding upon federal courts.

offered by the Bureau of Prisons, and that if completed successfully, he could potentially be

released from prison a year early (8/9/07 Tr. 131-132).  There was no testimony at the hearing

that Doug Wood made any promises about Defendant's release date.  In addition, contrary to

counsel's (Billy Ponds) statement at the hearing (id.), citizenship is not a requirement for

eligibility in the drug treatment program or for the potential reduction in sentencing after

completion of the program.  See 28 C.F.R. § 550.54 (requirements for drug abuse treatment

course), § 550.56 (listing eligibility criteria for institutional drug abuse treatment programs), §

550.58 (listing categories of individuals ineligible for a sentence reduction notwithstanding

successful completion of drug treatment program; stating that individuals with INS detainers are

ineligible for early release).  No INS detainer has been lodged against Defendant, and Defendant

has not provided any evidence to demonstrate that he is ineligible for the drug treatment program

or early release.[5]

---

[5]    Defendant's argument is also based on pure speculation.  The drug treatment program is only open to inmates who are determined to have a substance abuse problem or who have been recommended by the sentencing judge to be placed in the program.  See 28 C.F.R. §§ 550.54 and 550.58.  Furthermore, upon completion of the residential drug-treatment program, a participant must complete a community based program.  See 28 C.F.R. § 550.56.  Only then is a person eligible for early release.  See 28 C.F.R. §§ 550.56 and 550.58.  Placement in a community based program, however, is within the discretion of the warden where an inmate is incarcerated.  See 28 C.F.R. § 550.58(a)(1)(v).  Here, Defendant has not demonstrated 1) that he would have been deemed to have a drug abuse problem, 2) that he would have been placed in the drug treatment program, or 3) that he would have qualified for early release based on the Warden's discretionary decision.  For these reasons, whether Defendant could have received a reduction in his sentence following completion of the drug treatment program is not a direct consequence of his guilty plea.  Broomes v. Ashcroft, 358 F.3d 1251, 1256-57 (10th Cir. 2004) ("A consequence is collateral if it remains beyond the control and responsibility of the district court in which that conviction was entered").   Thus, even if Doug Wood provided erroneous advice on this issue, the error did not amount to a deprivation of counsel guaranteed under the Sixth Amendment.  Id.; cf. United States v. Sambro, 454 F.2d 918, 921-22 (D.C. Cir.1971) (finding no basis for withdrawal of guilty plea prior to sentencing even if counsel affirmatively misinformed the defendant about a collateral consequence of pleading guilty); Del Rosario, 902

Nor is it likely that Defendant would not have entered his guilty plea over the possibility of credit under such drug treatment program (which permits reducing a sentence by up to 12 months of jail time), considering the alternative consequence of going to trial in this case, as well as facing prosecution in Maryland for the crimes occurring at the time Defendant was arrested on July 19, 2006. Having received discovery and having reviewed it with Defendant, Mr. Wood provided Defendant with sage advice, as any competent attorney would, to accept the Government's plea offer and spare himself from an additional 53 months of incarceration under the Sentencing Guidelines that he could have received had he gone to trial in this case,[6] as well as an additional mandatory minimum sentence of 10 years he could have received for charges that would have been brought in Maryland based on Defendant's conduct at the time of his arrest. Thus, even if the Court were to conclude that the advice provided by Doug Wood was erroneous with respect to this issue, Defendant cannot demonstrate prejudice necessary to sustain a claim of ineffective assistance of counsel. See Hill, 474 U.S. at 59.[7]

_____

F.2d at 59 (constitution requires that defendant be "fully aware of the direct consequences of a guilty plea" not "collateral consequences") (citing Brady, 397 U.S. at 755; Sambro).

[6] Defendant's apparent criminal history score is four points, Category III, based on a misdemeanor conviction and the fact that he was on supervision at the time of the instant offense and had been released from prison less than two years prior to the offense. Under the Plea Agreement, Defendant's offense level is 29 based on 124 grams of crack and a three-level reduction for early acceptance of responsibility. Defendant's estimated Guidelines range is 108 to 135 months of incarceration, with a 120-month mandatory minimum. Were Defendant to go to trial, his offense level would be 32, and his Guidelines range would be 151 to 188 months in this case alone.

[7] In Hill v. Lockhart, the petitioner alleged that he received constitutionally ineffective assistance of counsel because of counsel's erroneous advice as to petitioner's parole eligibility. Hill, 474 U.S. at 53. The Supreme Court found that petitioner did not satisfy the "prejudice" requirement where petitioner did not allege that had counsel informed him correctly about his parole eligibility date, he would not have pleaded guilty and would have insisted on

8.      Defendant Failed to Demonstrate the Existence of a Conflict of Interest,
        or That His Attorney Was Adversely Affected by Any Conflict of Interest.

Lastly, with respect to the claim of ineffective assistance of counsel, the defense asserts that Doug Wood had a conflict of interest in representing defendant. This argument centers around Defendant's prior arrest for a drug trafficking offense on April 4, 2000, in which he and an individual, Dennis Butler, were removed from a vehicle from which the police recovered 69 small bags of crack cocaine (see Government Exhibit No. 12). According to the statement of probable cause, the passenger (i.e., Defendant Berkeley) was seen engaging in a hand-to-hand transaction with an individual outside the vehicle (id.). At the hearing on the Motion on August 9, 2007, Doug Wood became aware and testified that he represented Dennis Butler in connection with that case (8/9/07 Tr. 145). The defense argues that had Defendant gone to trial, Mr. Wood would have had a conflict of interest if either Defendant or the Government were to call Dennis Butler as a witness.

"Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for [such] claim of ineffective assistance." Cuyler v.

---

going to trial, nor did he allege any special circumstances that could support conclusion that he placed particular emphasis on his parole eligibility in deciding whether to plead guilty. Hill, 474 U.S. at 60. One factor the Supreme Court relied upon in finding that the petitioner had not demonstrated "prejudice" was that "petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted." Id. The same logic applies to Defendant's case even if the Court were to assume that Doug Wood's advice was erroneous on this issue. Defendant has not alleged that he would have rejected the plea offer had he been advised differently with respect to eligibility for early release. In addition, Defendant's belief that he could be released one year earlier if he completed a drug treatment program would have also affected Defendant's calculation of the time he likely would serve if he went to trial.

Sullivan, 446 U.S. 335, 350 (1980) (holding that multiple, concurrent representation by attorney does not violate Sixth Amendment unless it gives rise to an actual conflict of interest). "In order to demonstrate a violation of his Sixth Amendment rights [based on an attorney's conflict of interest], a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Id.; see also Strickland v. Washington, 466 U.S. 668, 692 (1984); United States v. Bruce, 89 F.3d 886 (D.C. 1996) ("Even under Cuyler's lenient actual conflict of interest standard, a defendant must show not only that the attorney faced a conflict, but also that the conflict adversely affected his lawyer's performance").

The defense has not demonstrated that Dennis Butler possessed information regarding the April 2000 arrest that would be beneficial to Defendant such that Butler's testimony would tend to negate a showing of Defendant's predisposition to sell drugs. Nor would the Government have any reason to believe that Butler would testify truthfully if called as a witness by the Government. Thus, Defendant has not shown that either party would have called Dennis Butler as a witness were Defendant to have gone to trial in this case. The conflict of interest asserted by the defense here is therefore purely hypothetical, and Defendant cannot demonstrate the "factual predicate" for his claim of ineffective assistance of counsel based on a purported conflict of interest. Cuyler, 446 U.S. at 349-50.

Moreover, Doug Wood testified that neither his prior representation of Dennis Butler nor any hypothetical conflict of interest stemming from that prior representation had any bearing on Mr. Wood's recommendation that Defendant Berkeley plead guilty in this case (8/9/07 Tr. 145-146). Thus, Defendant cannot show that this hypothetical conflict of interest "adversely affected his lawyer's performance." Cuyler, 446 U.S. at 350. Defendant's argument therefore has no

17

merit.[8]

II.    Defendant's Proffered Defense
       Does not Merit Withdrawal of His Plea.

Because Defendant has failed to demonstrate that entry of his plea was tainted in a

manner that violated his constitutional rights, either by a defect in the Rule 11 colloquy or by

ineffective assistance of counsel, Defendant is held to the very high threshold of demonstrating

actual innocence or a compelling defense.  United States v. Tolson, 372 F. Supp.2d 1, 25 (D.D.C.

2005) (motion to withdraw a guilty plea may be granted "on evidence of actual innocence alone

only when that evidence is of the most compelling sort – for example, exculpatory DNA

evidence or a newly discovered and credible alibi witness might, if proffered in a withdrawal

---

[8]    As stated above, a movant raising a claim of ineffective assistance of counsel
must typically show that counsel's performance was constitutionally deficient and that the
defendant was prejudiced as a result.  Hill, 474 U.S. at 57; Strickland, 466 U.S. at 687-88, 694.
In Cuyler, a case concerning counsel's representation of multiple parties in the case, the Supreme
Court held that "a defendant who shows that a conflict of interest actually affected the adequacy
of his representation need not demonstrate prejudice in order to obtain relief" and need only
show that "the actual conflict of interest adversely affected his lawyer's performance."  446 U.S.
at 349-50.  More recently, however, the Supreme Court explained that Cuyler's holding was
limited to cases of concurrent representation, rather than successive representation.  Mickens v.
Taylor, 535 U.S. 162, 176 (2002) (stating that "[w]hether [Cuyler] should be extended to [cases
of successive representation] remains, as far as the jurisprudence of this Court is concerned, an
open question").  The issued raised by the defense here is one of successive representation
because Doug Wood represented Dennis Butler in the earlier case before he represented
Defendant Berkeley in this case.  Thus, whether prejudice must be shown in this case is a
question that the Supreme Court specifically left open in Mickens.  Although the D.C. Circuit
Court of Appeals has not addressed the issue, under either rule, Defendant cannot demonstrate
that his plea should be withdrawn.  For the reasons previously stated, Defendant has not shown
that he was prejudiced given the extremely favorable terms of the plea offer and the lack of any
viable defense in this case.  Moreover, even if Defendant is not required to show prejudice in this
case, he has not demonstrated either an actual conflict of interest or that his lawyer's performance
was adversely affected by the purported conflict.

motion, compel the Court to grant relief." ); <u>accord</u> <u>United States v. Cray</u>, 47 F.3d 1203, 1208

(D.C. Cir. 1995) (affirming lower court's denial of motion to withdraw guilty plea and stating

that a "defendant who fails to show some error under Rule 11 has to shoulder an extremely heavy

burden if he is ultimately to prevail").  Here, Defendant claims he was entrapped and sold the

drugs under duress.[9]  The evidence presented at the hearing shows that neither of these related

defenses is viable, and certainly not compelling, as is required where a defendant fails to

demonstate that the plea was constitutionally deficient.  <u>See</u> <u>Tolson</u>, 372 F. Supp.2d at 25; <u>cf.</u>

<u>United States v. Curry</u>, __ F.3d __, 2007 WL 2176135 *4, 5-6 (D.C. Cir. 2007) (finding no abuse

of discretion by district court in giving little weight to defendant's alleged defense); <u>Hanson v.</u>

<u>United States</u>, 393 F.3d 983 (D.C. Cir. 2003) (same); <u>United States v. Cray</u>, 47 F.3d 1203, 1208

(D.C. Cir. 1995).

      A.      <u>Defendant's Entrapment Defense is Not Viable.</u>

"The defense of entrapment has two related elements:  government inducement of the

crime, and a lack of predisposition on the part of the defendant to engage in the criminal

conduct."  <u>Hanson v. United States</u>, 393 F.3d 983, 988 (D.C. Cir. 2003).  "When a defendant

---

[9]     Significantly, Defendant has not presented new evidence that was unknown to him at the time of the guilty plea.  Defendant's Motion would be more compelling had the informant's identity been unknown to Defendant before Defendant entered his plea.  <u>See</u> <u>United States v. Barker</u>, 514 F.2d 208, 226 n.16 (D.C. Cir. 1975) (noting that discovery of new evidence unknown to the movant at the time of his plea may provide grounds for fair an just reason to withdraw guilty plea); <u>United States v. Horne</u>, 203 F.3d 53 (D.C. 2000) (evidence previously known does not constitute "newly discovered evidence"); <u>see also</u> <u>United States v. Murguia Oliveros</u>, 21 Fed. Appx. 670 (9th Cir. 2001); <u>United States v. McKnight</u>, 242 F.3d 378 (8th Cir. 2000) (absent new evidence, defendant failed to provide "fair and just reason" for withdrawal of guilty plea); <u>United States v. Gordon</u>, 4 F.3d 1567, 1573 (10th Cir. 1993) (concluding defendant offered no new evidence and finding no "fair and just reason" to withdraw guilty plea before sentencing).

claims entrapment, he first bears the burden of showing that he was induced by the government

to commit a crime he otherwise would not have committed." Id. "If the defendant is successful,

the burden then shifts to the government to prove the defendant was predisposed to commit the

crime." Id.

The government's behavior amounts to inducement when it was "such that a law-abiding

citizen's will to obey the law could have been overborne." United States v. McLendon, 378 F.3d

1109, 1114 n.8 (D.C. 2004); see also  United States v. Glover, 153 F.3d 749 754, (D.C. 1998)

(quoting United States v. Kelly, 748 F.2d 691, 698 (D.C. Cir. 1984); citing United States v.

McKinley, 70 F.3d 1307, 1313 (D.C. 1995)).  "Repeated government solicitations do not

establish inducement unless the requests are coupled with persuasive overtures, or unless there is

evidence of reluctance on the defendant's part demonstrating that the repetition of the requests

may have moved an otherwise unwilling person to commit a criminal act." Hanson, 393 F.3d at

989.  Here, there was no credible evidence that that the informant's conduct rose above what

typically occurs in a drug transaction.  Defendant asserts he was pressured and threatened by the

informant's letter.  Significantly, Defendant provided no other instances in which he was

threatened (8/9/07 Tr. 41-42), and thus has not shown sufficient "repetition" by the informant.  In

addition, Defendant did not present any evidence of reluctance or that he resisted the alleged

threat, other than by conclusory allegations in his affidavit.[10]

---

[10]     Defendant's argument also defies common sense.  Had it been easy for anyone to obtain 62 grams of crack cocaine, as Defendant claims (8/9/07 Tr. 70), the informant would have been able to deal directly with and turn in Defendant's supplier, which presumably would have resulted in a greater reward for the informant when it came time for the informant to be sentenced as a cooperator.  Defendant's ease in obtaining 62 grams of crack, and the informant's inability to deal directly with Defendant's supplier, demonstrates that Defendant was already connected to suppliers of large quantities of drugs and distinguishes Defendant as a significant

Moreover, Defendant never told Doug Wood that he was pressured or threatened by the informant (8/9/07 Tr. 122-23). It is unimaginable that that a person would be set up by an informant in the manner Defendant now claims and yet never mention to his longtime attorney that he had been pressured and threatened by the informant. The only reasonable conclusion is that Defendant never was threatened by the informant, and Defendant's newly asserted defense has been fabricated.[11]

With respect to the second prong of an entrapment defense, Defendant fails to establish inducement when, as in this case, there is ample evidence that he was motivated by profit, rather than by fear of the informant. See Hanson, 393 F.3d at 989. During the first sale, Defendant raised the possibility of future transactions and voluntarily offered greater amounts of drugs to the informant, as well as offering powder cocaine instead of just crack (see Government Exhibit No. 4 at 6-7; 8/9/07 Tr. 171-72). Significantly, Defendant did not present any evidence of reluctance in the tone of his voice during this transaction, or during any of the other recorded conversations (see 8/9/07 Tr. 147, 177). In fact, during the second transaction, Defendant stated he had previously given the informant a more favorable price ($1700, rather the ordinary $1800) as a favor because the informant had just returned home from prison (see Government's Exhibit

---

distributer of drugs.

[11]      Ayesha McKeithan's testimony at the hearing was also unconvincing. She testified that her father gave her a letter to deliver to Defendant (8/9/07 Tr. 99), but she did not ask her father what the letter was about even though he had never given her a letter to deliver before (id.). Despite not having enough interest to ask her father about the letter (id.), she asked Defendant numerous times what it was about until Defendant told her of the purported threat (id. at 100). She also testified that she did not look at the letter, which was given to her in an envelope (id.). Sergeant Sloan testified, however, that when he spoke with Ms. McKeithan, she told him that the letter was handwritten (id. at 200, 203-04).

No. 4 at 15; 8/9/07 Tr. 71, 175-76).  Defendant expected $1800 from the undercover officer (id.),

and expressed no reluctance when the undercover officer discussed engaging in another sale,

where the undercover officer would pay Defendant the greater price (id.).

Defendant's conduct also shows that he was predisposed to sell drugs.  He was familiar

with prices for large quantities of drugs (see, e.g., 8/9/07 Tr. 69, 77).  At the hearing, Defendant

admitted to possessing 62 grams of crack cocaine on at least one occasion before he sold crack to

the informant (id. at 67-69).  Defendant admitted to selling drugs at least "a couple of times"

when he was approximately 17 years old (id.).  He also admitted to being the passenger in the

vehicle that was pulled over in April 2000 in Maryland, from which the police recovered a

substantial amount of crack cocaine (id. at 73-75).  At the hearing on the Motion, the defense

stipulated to the statement of probable cause from that prior case, which demonstrated that

Defendant engaged in a hand-to-hand transaction on April 4, 2000  (see Government Exhibit No.

12).  After the officers removed Defendant and the driver from the vehicle, the officers recovered

69 small bags that amounted to 17.8 grams of crack cocaine (id.).   Defendant's prior drug

transactions are sufficient to demonstrate predisposition.  Hanson, 393 F.3d at 989 n.3.

In addition, the Government provided uncontested evidence that, at the time of

Defendant's arrest in 2006, law enforcement recovered 31 grams of crack cocaine from his

person, plus a firearm and over $90,000 from inside Defendant's vehicle, which Defendant was

on the verge of entering when he was stopped (8/9/07 Tr. 75-77; see also Statement of Offense).

This evidence further demonstrates that Defendant was predisposed to sell drugs.  See United

States v. Kelly, 748 F.2d 691, 699 (D.C. Cir. 1984) (subsequent events relevant to issue of

predisposition where entrapment defense raised); United States v. Lego, 855 F.2d 542, 546 (8th

Cir. 1988) (defendant's subsequent acts relevant to defendant's state of mind at earlier time);
United States v. Roland, 748 F.2d 1321, 1327 (2d Cir. 1984) (subsequent conduct admissible to
prove predisposition); United States v. Mack, 643 F.2d 1119, 1121 (7th Cir. 1981).  Defendant's
testimony that he sold drugs only to the informant and the undercover officer and that he has not
sold drugs since September 21, 2005, is inconsistent with his physical possession of 31 grams of
crack on his person in July 20006, several months after the informant had been reincarcerated in
April 2006, and nearly a year after the sales giving rise to the charges in this case.  The court
should not credit Defendant's testimony that he possessed the 31 grams of crack for personal use.

      B.    Defendant's Claim of Duress is Unsubstantiated.

      Defendant also asserts the related defense that the confidential informant placed him
under duress, causing Defendant to be "afraid for [his] life as well [sic] other people closed [sic]
to [him]."  (Berkeley Affidavit ¶9).  A defendant may assert duress as a defense only if he shows
that he acted under the threat of imminent death or serious bodily harm.  United States v.
Jenrette, 744 F.2d 817, 820 (D.C. Cir. 1984) (citing United States v. Bailey, 444 U.S. 394, 409
(1980)).  Failure to show that there was no reasonable, legal alternative will preclude a successful
duress claim.  Id. at 820-21 (congressman failed to argue that there was no reasonable, legal
alternative to accepting the bribe money); see also United States v. Rawlings, 982 F.2d 590, 593
(D.C. Cir. 1993).  Under the first prong, a threat of future harm or a threat made before the
commission of an illegal act generally is not sufficient because if the threat is not immediate,
there will be ample opportunity to avoid the illegal act.  Id. at 821 n.6.  The duress claim in
Jenrette failed because there was no imminent threat prior to the defendant accepting a bribe after
considering the opportunity for two days.  Id.; see also Rawlings, 982 F.2d at 591-92 (a

theoretical and unsubstantiated threat from a narcotics supplier against defendant's kin did not satisfy the imminent harm prong).  Under the second prong, a defendant cannot claim duress when he had, but passed up, an opportunity to seek the aid of law enforcement officials. Rawlings, 982 F.2d at 593; United States v. Gaviria, 116 F.3d 1498, 1531 (D.C. Cir. 1997) (failure to inform anyone of a threat to defendant's daughter during a thirteen-month drug conspiracy deemed insufficient).  Under both requirements, Defendant failed to meet his burden of establishing his claim of duress.

First, Defendant presented only one instance (i.e., the letter) in which the informant purportedly threatened Defendant (8/9/07 Tr. 41-42).  Second, there was no evidence that Defendant or his loved ones were in imminent harm.  Ms. McKeithan did not live with her father (id. at 96); she was independent (id. at 94-95, 97-98).  Third, there was no evidence that Defendant attempted to dissuade the informant by talking to the informant about the threatening letter (see id. at 41-42), or that Defendant ever expressed reluctance while selling the drugs for a profit (see id. at 147, 177).  Rather, Defendant sold the drugs to informant approximately one week after the informant began making inquiries about obtaining a large quantity of drugs.[12] Lastly, despite being on probation, Defendant never reported his concern to his probation officer or the police (Affidavit ¶ 10).  To him, the prospect of setting up another sale to the undercover officer was "cool" (Government Exhibit No. 4 at 15).

---

[12]    Even according to the defense, the informant began his inquiries regarding drugs in mid-July 2005 (8/9/07 Tr. 16, 105-06), and Defendant sold the first 62 grams of crack to informant within a "couple of weeks," on August 2, 2005 (id. at 16).   Defendant presented no evidence that he attempted to dissuade the informant within this time frame, which not only demonstrates a lack of reluctance on his part, but it also negates the argument that the harm from the alleged threat was "imminent".

Given the weakness of Defendant's proffered defenses of entrapment and duress, the Court should not permit defendant to withdraw his guilty plea.  Hanson, 339 F.3d at 988, 991 (affirming court's denial of defendant's motion to withdraw guilty plea based on defendant's claim of entrapment not withstanding defendant's testimony and specific averments at evidentiary hearing); accord Curry, __ F.3d __, 2007 WL 2176135 *4, 5-6 (D.C. Cir. 2007) (citing Hanson).  Here, Defendant claims he was entrapped and sold the drugs under duress.  The evidence presented at the hearing shows that neither assertion has merit.  Defendant has therefore failed to provide a "fair and just" reason to withdraw the  guilty plea in this case.

WHEREFORE, for the reasons stated above, it is respectfully requested that Defendant's motion be denied.

Respectfully submitted,
JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
Bar No. 451-058


_____/s/_____
By:    PERHAM GORJI
ASSISTANT U.S. ATTORNEY
Delaware Bar No. 3737
Federal Major Crimes Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-5060
perham.gorji@usdoj.gov




CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion has been served by first class mail upon counsel of record for the defendant, Harry Tun, Esquire, 400 Fifth Street, N.W., #300, Washington, D.C. 20001, this 20th day of August, 2007.


_____/s/_____
Assistant United States Attorney