UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case Number: CR06-208(GK) |
| | : | Judge Gladys Kessler |
| FRANK BERKELEY, | : | Next Court Date: No Date Set |
| | : | |
| Defendant. | : | |

===============================

### DEFENDANT'S POST-HEARING BRIEF

FRANK BERKELEY, by and through undersigned counsel, Harry Tun, and Billy L. Ponds, of The Ponds Law Firm, respectfully submit the Defendant's Post-Hearing Brief. In support thereof, the defendant states as follows:

Defendant Frank Berkeley (hereinafter Berkeley) submits that had his prior counsel, Douglas Wood, informed him of the entrapment defense, he would have proceeded to trial on this theory rather than enter a plea of guilty. Mr. Wood was laboring under an actual conflict of interest at the time he represented Berkeley and he was fully aware that entrapment was a defense available to Berkeley. Indeed, it was the only defense available given the strength of the government's case. Specifically, the videotapes and audiotapes unequivocally identified Berkeley as the person involved in both transactions. More importantly, Mr. Wood considered the entrapment defense although he never discussed it with Berkeley. Specifically, Mr. Wood took into consideration Berkeley's arrest in 2000 in Prince George's County, Maryland, which he understood would be introduced by the government to show predisposition to negate the entrapment defense.[1] This becomes a crucial point because in that same case Mr. Wood

---

[1] At the evidentiary hearing, the government introduced this evidence to show predisposition.

1

represented the co-defendant Dennis Butler (hereinafter Butler)[2] and Berkeley was represented by David Simpson, Esquire.  However, despite the fact that Mr. Wood carefully considered the entrapment defense, he did not explain it to Berkeley.

Mr. Wood's failure to discuss the entrapment defense with Berkeley was solely based on his efforts not to be disqualified from the case. District of Columbia Rules of Professional Conduct, Rule 1.9, Conflict of Interest: Former Client states as follows:

> "A lawyer who has formally represented a client in a matter shall not hereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."

Mr. Wood was prohibited from disclosing to Berkeley any of the information that he learned from Butler during his representation of Butler in the 2000 case, even if this information had been relevant to Berkeley's entrapment defense.  Mr. Wood did not explain to Berkeley the entrapment defense due to the fact that if Berkeley sought to proceed to trial and put on the entrapment defense Mr. Wood's former client, Butler, who was Berkeley's co-defendant in that case, would be called as an adversary witness for the government concerning the 2000 Prince George's County, Maryland case.

Berkeley submits that his guilty plea is constitutionally deficient in that he was denied effective assistance of counsel during the period his trial counsel and the government negotiated and executed the plea agreement.  The broad test for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *U.S. v. Tolson*, 372 F. Supp. 2d 1 (D.D.C. 2005).  The Sixth Amendment right to counsel "is the right to

---

[2] Mr. Wood during cross-examination initially denied representing Dennis Butler. However, during rebuttal he admitted that his prior testimony was inaccurate.  The Court can draw an adverse inference from this initial denial.

2

the effective assistance of counsel," *McMann*, 397 U.S. 771, 771 n.14, and "counsel… can… deprive the defendant of the right to effective assistance [] simply by failing to render 'adequate legal assistance.'" *Strickland v. Washington*, 466 U.S. 668, 686, 80 L.Ed. 674, 104 S.Ct. 2052 (1984) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344, 64 L.Ed. 2d 333, 100 S.Ct. 1708 (1980)).  Furthermore, "representation of a criminal defendant entails certain basic duties [including] … a duty to avoid conflicts of interest." *Strickland*, 466 U.S. at 688.  Thus, where a conflict of interest motivates defense counsel to render inadequate legal assistance during plea proceedings, the criminal defendant is deprived of his or her Sixth Amendment right to effective assistance of counsel and the plea proceeding is necessarily rendered constitutionally deficient for the purposes of the third factor evaluated on a withdrawal motion.  *Tolson, supra* at 14.

The Supreme Court has held that a criminal defendant makes a showing sufficient to support a finding of constitutionally deficient representation where he demonstrates that "an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 64 L.Ed. 2d 333, 100 S.Ct. 1708 (1980).  "By making the required showing under *Cuyler*, a defendant avoids the more stringent two-part test for ineffective assistance set forth in *Strickland*," as satisfaction of the *Cuyler* standard gives rise to a presumption of prejudice to the defendant's interests.  *Gantt*, 140 F.3d at 254. See also, Farley, 72 F.3d at 166; *United States v. Thomas*, 324 U.S.App. D.C. 374, 114 F.3d 228, 252 (D.C. Cir. 1996); *Tolson*, supra at 15.

To make out a successful ineffective-assistance claim under *Cuyler*, and thus avoid the prejudice requirement of *Strickland*, a defendant must show (1) that her attorney "actively represented conflicting interests[;]" *Strickland*, 466 U.S. at 692; and

3

(2) that "the conflict 'adversely affected [her] lawyer's performance.'" *United States v. Taylor*, 329 U.S. App. D.C. 231, 139 F.3d 924, 930 (D.C. Cir. 1998) (quoting *Strickland*, 466 U.S. at 692); see also *Gantt*, 140 F.3d at 254 (*Cuyler's* requirement that the conflict" adversely affect" the representation means the defendant must show that "the conflict had some negative effect upon his defense (defined as an actual lapse in representation)"). In other words, "a defendant [must] show that his counsel advanced his own, or another client's, interest to the detriment of the defendant." *Taylor*, 139 F.3d at 930. "If an attorney fails to make a legitimate argument because of the attorney's conflicting interests… then the *Cuyler* standard has been met." Id. (quoting *Bruce*, 89 F.3d at 896 (emphasis original). Additionally, the requirement that there be a causal relationship between the professed conflict and the attorney's allegedly deficient conduct entails that the attorney must have knowledge of the circumstances giving rise to the conflict in order for it to rise to the level of an "actual conflict" within the meaning of *Cuyler*. See *id.*; *United States v, Hopkins*, 43 F.3d 1116, 1117 (6th Cir. 1995); *Tolson, supra* at 15.

Berkeley has established that Mr. Wood had an actual conflict of interest as a result of his prior representation of Butler in the 2000 Prince George's County, Maryland case. Second, this conflict was the causal relationship which prevented Mr. Wood from discussing a legitimate argument, the entrapment defense, with Berkeley because he would have been required to reveal that his former client, Butler, would be a witness for the government and that he would be unable to represent Berkeley. Mr. Wood advanced his own interest in remaining as counsel rather than disclosing the information to Berkeley and allowing him to be informed of all available defenses prior to pleading

4

guilty.[3]  Third, there was a causal connection between the conflict of interest and Mr. Wood's conduct.  Mr. Wood had intimate knowledge of the 2000 Prince George's County case, including but not limited to, the facts, the names of the defendants, the name of the attorney for Berkeley, as well as the outcome of the Berkeley case.  When Mr. Wood decided not to inform Berkeley of the entrapment defense, he was fully aware that he was laboring under an actual conflict of interest[4].

Finally, Berkeley submits that Mr. Wood provided erroneous advice to him concerning the Comprehensive Drug Treatment Program in the Federal Bureau of Prisons.  Mr. Wood erroneously advised Berkeley, a resident alien, that he would be able to receive a maximum of one (1) year off of his sentence by participating in the above-noted program[5].  Berkeley submits that Mr. Wood, an experienced federal court practitioner, provided this erroneous advice to coerce him into entering a guilty plea rather than pursuing the entrapment defense.

In conclusion, Mr. Wood's conflict of interest led to his failure to advise Berkeley of the entrapment defense.  Consequently, Berkeley was deprived of his Sixth Amendment right to effective assistance of counsel.

Frank Berkeley
By Counsel

---

[3] Mr. Wood was retained counsel in this case.
[4] Mr. Wood testified to these facts at the evidentiary hearing.
[5] At the evidentiary hearing, Mr. Wood admitted that he provided erroneous advice to Berkeley concerning the Comprehensive Drug Treatment Program.

5

Respectfully submitted,

/s/
_____
Billy L. Ponds
The Ponds Law Firm
Bar Number 379883
3218 O Street, NW
Suite Two
Washington, DC 20007

/s/
_____
Harry Tun, Esquire
Bar Number 416262
400 Fifth Street, NW
Suite 300
Washington, DC 20001
(202) 333-2922

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the Defendant's Post-Hearing Brief was sent via electronic case filing system to Perham Gorgi, Assistant United States Attorney, Office of the United States Attorney, 555 4th Street, NW, Washington, DC 20530 on this 12th day of September 2007.

/s/
_____
Harry Tun