## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    :
    :
v.    :    **Criminal No. 06-208 (GK)**
    :
FRANK BERKELEY,    :    **FILED**
    :
Defendant.    :    OCT 1 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### MEMORANDUM OPINION

The Defendant, Frank Berkeley, filed a Motion to withdraw his guilty plea ("the Motion").

Upon consideration of the Motion, the Opposition, the Reply, the evidentiary hearing held on August

9, 2007, the post-hearing Memoranda, the applicable case law, and the entire record herein, the Court

concludes that the Motion should be **denied**.

## I.    BACKGROUND

On July 11, 2006, the Defendant was indicted on two counts of unlawful distribution of 50

grams or more of cocaine base in violation of 21 U.S.C. Section 841(a)(1) and Section

841(b)(1)(A)(iii). He was arrested on July 19, 2006. On August 3, 2006, Douglas Wood, Esq.

("Wood" or "Doug Wood"), entered his appearance on behalf of Defendant as retained counsel. The

Defendant had retained Mr. Wood as his counsel on prior occasions. At the Status Conference on

August 3, 2006, the Defendant requested additional time in order to review the discovery materials

(primarily video and audio tapes of the transactions in question) and assess the case; the request was

granted. At another Status Conference on August 29, 2006, the Defendant again requested additional

time in order to evaluate the Government's plea offer; the request was granted. At a Status

Conference on September 14, 2006, at the request of the Defendant, a plea hearing was set for September 29, 2006.

At the September 29, 2006 hearing, pursuant to the plea agreement, the Defendant entered a plea of guilty to one count of the two-count indictment, of unlawful distribution of 50 grams or more of cocaine base, in violation of 21 U.S.C. Section 841(a)(1) and Section 841(b)(1)(A)(iii), pursuant to a full and comprehensive colloquy as mandated by Fed. R. Crim. P. 11. Among the many subjects discussed at that plea hearing, Defendant was informed that the charge to which he plead guilty carries a penalty of no less than 10 years and no more than life.

On October 5, 2006, barely a week after entering his plea, Defendant filed a Motion to Substitute Counsel. That request was granted and Harry Tun, Esq. entered his appearance on behalf of Defendant. At that time, the sentencing hearing was reset for February 15, 2007. On February 2, 2007, the Defendant filed the present Motion requesting to withdraw his guilty plea. Because of the pendency of this Motion, the sentencing hearing date was vacated and a status was set for February 14, 2007. Thereafter, various pleadings were filed, a full-day evidentiary hearing was held, and post-hearing memoranda were filed.[1]

## II.    LEGAL STANDARD

Pursuant to Fed. R. Crim. P. 11(d)(2)(B), a defendant may withdraw a guilty plea prior to sentencing if he "can show a fair and just reason for requesting withdrawal." The defendant bears the burden of proving that there are valid reasons for withdrawal. Id.; United States v. Rogers, 387 F.3d 925, 932 (7th Cir. 2004). In United States v. Curry, 494 F.3d 1124, 1128 (D.C. Cir. 2007), our

---

[1]    Substantial delays were encountered because of the serious medical condition of one of Defendant's attorneys and his various hospitalizations.

Circuit recently reiterated the three factors to be considered in determining whether a motion to withdraw a guilty plea prior to sentencing should be granted, i.e.,

> (1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted.

494 F.3d at 1128.

Defendant makes many arguments as to why he should be allowed to withdraw his guilty plea, all of which will be addressed seriatim. Essentially, he maintains that his prior lawyer, Doug Wood, failed to inform him of the entrapment defense because he had a conflict of interest stemming from his representation of Berkeley's co-defendant when they were both arrested in 2000 in Prince Georges County, Maryland on drug charges. According to the Defendant, Wood believed that the 2000 arrest would be used against him in the present case to show predisposition, thereby jeopardizing any entrapment defense he might present. Were this to happen, according to Defendant, Wood would then have to withdraw as counsel in the present case. He also argues that he was deprived of his constitutional right to effective assistance of counsel because Wood never informed him of the entrapment or duress defense, and that had he been so informed, he would have proceeded to trial on one or both of those defenses, rather than enter a plea of guilty. There is simply no credible evidence to support these highly speculative theories.

## III.   ANALYSIS

### A.    The Guilty Plea Was Not Tainted by Any Non-Compliance with Fed. R. Crim. P. 11

Defendant does not claim that his plea proceeding violated any of the requirements of Fed. R. Crim. P. 11. A defendant "who fails to show some error under Rule 11 has to shoulder an

extremely heavy burden if he is to ultimately prevail" in his effort to withdraw his plea. United States v. Cray, 47 F.3d 1203, 1208 (D.C. Cir. 1995) (citations omitted).

## B.    Defendant Was Not Pressured or Coerced Into Entering His Plea

As an initial matter, Defendant argues that he was unduly pressured to enter the plea by both the Government and his attorney, Doug Wood. At the Rule 11 colloquy, the Court asked very specific questions as to whether the Defendant had been pressured in any way by any person to enter his guilty plea and whether he was acting voluntarily and of his own free will. Based on his demeanor and answers to questions, the Court made findings that the Defendant was acting freely and voluntarily and had not been subjected to any undue or inappropriate pressure.

The Defendant argued at the evidentiary hearing that immediately before the plea hearing, in the cellblock behind the courtroom, Wood was so angry about the Defendant's wish to change his mind that the Defendant became "scared" and entered the plea out of fear. The Defendant's testimony was simply not credible.

First, he testified totally to the contrary at the plea hearing. Moreover, at the Motion hearing, he admitted that Wood said, "do what you want to do. I'm getting tired of you." Nor did Wood ever say he would not represent the Defendant if he insisted on going to trial. Second, Doug Wood had previously been retained by the Defendant in three other criminal cases and had obtained favorable results for him. There is no reason to believe, given this four-year relationship, that Defendant would suddenly have become "scared" of Wood. Third, the Defendant had been given several continuances and ample time to consider whether he wished to go forward with the plea. Fourth, the testimony the Defendant gave at the evidentiary hearing clearly served his own self-interest in trying to withdraw the guilty plea. Finally, the Court credits the testimony of Doug Wood, a highly

-4-

experienced, extremely capable attorney, who has represented many defendants on drug distribution and related charges. Sometimes Mr. Wood goes to trial and sometimes he negotiates a plea for his client. The Court simply does not believe, especially in the context of their extended professional relationship, that he "scared" Mr. Berkeley into entering a guilty plea his client did not wish to enter.[2]

### C.    Doug Wood Did Not Have a Conflict of Interest

As noted earlier, the Defendant argues that his prior defense counsel had a conflict of interest in this case which would justify allowing him to withdraw his guilty plea. The Supreme Court held in Cuyler v. Sullivan, 446 U.S. 335, 348 (1980), that a criminal defendant makes a showing sufficient to support a finding of constitutionally deficient representation if he can demonstrate that "an actual conflict of interest adversely affected the lawyer's performance." Our Circuit has noted that "[b]y making the required showing under Cuyler, a defendant avoids the more stringent two-part test for ineffective assistance set forth in Strickland [v. Washington, 466 U.S. 668 (1984)]," United States v. Gantt, 140 F.3d 249, 254 (D.C. Cir. 1998), because satisfaction of the Cuyler standard gives rise to a presumption of prejudice to the defendant's interests. United States v. Tolson, 372 F. Supp. 2d 1, 12 (D.D.C. 2005).

Defendant claims that if he had gone to trial, Wood would have had a conflict of interest if either he or the Government were to call Dennis Butler, the Defendant's co-defendant in the 2000 Maryland arrest, as a witness. Defendant further argues that if he had gone to trial and relied upon the entrapment defense, which he claims he was never told about, that the Government would then

---

[2]    Mr. Wood acknowledged in his testimony that he felt strongly that the Defendant could not win the case by going to trial because the videotapes and audiotapes presented overwhelming evidence of his guilt. Consequently, Wood strongly urged his client to accept the plea because he felt it was the best alternative facing him in an essentially "no-win" situation.

have called Butler to demonstrate Defendant's predisposition to commit the drug distribution charge in this case. At that point, according to the Defendant, Wood would have had a direct conflict of interest because he represented Butler previously.

On this record, Defendant cannot make the requisite showing under <u>Cuyler</u>, "that his counsel's activities represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance." 466 U.S. at 350.

First, he has not shown that either party would have called Dennis Butler as a witness if the Defendant had gone to trial in this case. Second, Wood testified credibly that neither his prior representation of Dennis Butler (who he did not even remember representing until he asked his staff to check office records), nor any conflict of interest which might possibly have stemmed from that representation, had any bearing on his very strong recommendation that Defendant plead guilty in this case. Given the strength of the Government's case, and the Defendant's prior drug activities, Wood was convinced that trial was not in the Defendant's best interest because of the heavy sentence he would most probably receive if convicted. For these reasons, the Defendant cannot establish that there was any conflict of interest, no less that it "adversely affected his lawyer's performance." <u>Id</u>.[3]

### D.    Defendant's Prior Counsel Was Not Constitutionally Ineffective

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court set forth its two part test for determining whether defense counsel's performance was constitutionally ineffective. Under this test, a defendant must show, first, that "counsel's performance was deficient," and, second, "that

---

[3]        In 2002, in <u>Mickens v. Taylor</u>, 535 U.S. 162, 176 (2002), the Supreme Court limited <u>Cuyler's</u> holding to cases of concurrent, rather than successive, representation. Thus, there is doubt as to whether the <u>Cuyler</u> analysis, with its more lenient standard for ineffective assistance of counsel, even applies to the present case of concurrent representation.

the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, "a defendant must show that his counsel's performance fell below 'an objective standard of reasonableness' under prevailing professional norms." United States v. Glover, 153 F.3d 749, 758 (D.C. Cir. 1998) (quoting Strickland, 446 U.S. at 687-88). Defendant cannot make any such showing in this case despite the many errors he claims Wood made.

1. The Defendant claims Wood failed to adequately investigate the case and interview witnesses. The record is to the contrary. Wood visited the Defendant at the jail at least three times and spent 30-40 minutes with him during each visit, and saw him another time in the courthouse when a court proceeding was scheduled. He reviewed the discovery materials with Defendant and arranged for him to see the videotapes and listen to the audiotapes of the drug transactions, as well as review transcripts of the telephone conversations arranging those transactions. Wood reviewed the discovery with the Defendant's family, as well as his girlfriend, and showed her the videotape of the Defendant selling the drugs. Given the videotapes and the audiotapes, the knowledge of who the confidential informant was (his girlfriend's father), and the failure of the Defendant to identify any other witness who could help his case, Wood's pretrial investigation was more than ample to enable him to realistically assess the Government's case and urge his client to accept a plea offer.

2. Defendant argues vigorously that he was never told about the potential defenses of entrapment or duress. That is correct. The reason is quite simple, namely, that Defendant never provided Wood with any information to support either defense. A defendant may assert duress as a defense only if he shows that he acted under the threat of imminent death or serious bodily harm. United States v. Jenrette, 744 F.2d 817, 820 (D.C. Cir. 1984) (citing United States v. Bailey, 444 U.S. 394, 409 (1980)). The Court credits Wood's testimony that the Defendant never told him about

a threatening letter he claimed to have received from his girlfriend's father. Nor did the Defendant's girlfriend, Ms. McKeithan, who allegedly knew of the letter, ever tell Wood of the letter's existence. Nor did the Defendant's girlfriend inform Wood that her father had pressured Defendant or threatened him in any way. Wood never discussed entrapment with the Defendant because he never considered it to be a viable, possible defense. As he testified, the subject "just never came up," and if it had, he would have rejected it. Once again, given the strength of the Government's case, and the failure to tell defense counsel about any allegedly threatening letter, Wood's failure to consider the entrapment and duress defenses certainly did not fall outside the "range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985).

3. The advice that Wood gave the Defendant regarding his possible sentence provides no basis for a finding of ineffective assistance of counsel. During the Rule 11 colloquy the Defendant was properly advised of the minimum and maximum sentences he faced, as well as an estimate, by both Government and defense counsel, of what the applicable sentencing guideline range would be in his case. Moreover, the Court emphasized at the Rule 11 plea hearing that this was only an estimate and that the guideline range would not be finalized until receipt of the Presentence Investigation Report. At the Motion hearing, the Defendant admitted that Wood told him only that it was "most likely" that he would get the minimum sentence of 120 months, rather than life imprisonment. Such advice does not constitute ineffective assistance of counsel.[4]

---

[4]    Wood accurately advised the Defendant that if he accepted the plea offer, he would avoid the possibility of an additional 53 months of incarceration under the sentencing guidelines which he would face if convicted at trial, as well as an additional 10-year mandatory minimum sentence he would receive if the Government successfully prosecuted him in Maryland. Wood emphasized that he was particularly concerned about a double prosecution in Maryland and the additional 10-year mandatory minimum. The plea offer Wood negotiated precluded the Government
(continued...)

Finally, the advice Defendant received about deportation was not inaccurate. Wood informed him that deportation was highly unlikely. Given the fact that there was, and still is, no INS detainer filed against the Defendant, who is a lawful resident alien, this advice was not inaccurate and did not constitute ineffective assistance of counsel. Moreover, at the time of the guilty plea, the Court explored this issue with the Defendant and emphasized that no one could be sure of what would happen because the final decision was up to INS.

Wood admitted that he told his client that after being sentenced, he could be placed in a Bureau of Prison drug treatment program which, if completed successfully, could allow him to be released from prison a year early. However, Wood made no absolute promises that this would occur or that this was a statutory entitlement. Finally, Defendant is simply in error in arguing that citizenship is a requirement for eligibility in the BOP drug treatment program or for granting a reduction of sentence upon successful completion of that program. See 28 C.F.R. § 550.54.

In sum, the numerous deficiencies which Defendant alleges in Wood's representation are simply not established by the evidentiary record in this case and he cannot meet the first prong of Strickland's two-part test for assessing claims of ineffective assistance of counsel.

4.    As the Court of Appeals noted in Curry, 494 F.3d at 1130-31, "[b]ecause [Berkeley] has failed to satisfy the first prong of the Strickland test, we need not dwell on the second." The Court then proceeded to discuss, in language particularly applicable to the facts of this case, how the prejudice requirement of the second prong of Strickland should be interpreted.

> "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there
> is a reasonable probability that, but for counsel's errors, he would not have pleaded

---

[4](...continued)
from bringing the Maryland charges.

guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S. Ct. 366. Moreover, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id. These "predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" Id. at 59-60, 106 S. Ct. 366 (quoting Strickland, 466 U.S. at 695, 104 S. Ct. 2052); see Roe v. Flores-Ortega, 528 U.S. 470, 486, 120 S. Ct. 1029, 145 L. Ed.2d 985 (2000) (describing Hill as holding that "the prejudice inquiry depends largely on whether th[e] affirmative defense might have succeeded, leading a *rational defendant* to insist on going to trial" (emphasis added)). Id.

In this case, given the videotapes, the audiotapes, and the Defendant's past history, it is indeed doubtful that any rational defendant would have chosen to go to trial.

Thus, Defendant has failed to satisfy either prong of the Strickland test and his claim of ineffective assistance of counsel must be rejected.

### E.    The Defendant Has Not Asserted a Viable Claim of Innocence

Under Curry, the Court must consider "whether the defendant has asserted a viable claim of innocence." 494 F.3d 1128. In its post-hearing brief, Defendant concedes that "the videotapes and audiotapes unequivocally identified Berkeley as the person involved in both transactions." Deft.'s Post-Hearing Brief at 1. Defendant also concedes that the entrapment defense "was the only defense available given the strength of the Government's case." Id.

Thus, the Defendant does not contest that he participated in the actual transactions that formed the basis of the Government's charges in the indictment. In United States v. Hanson, 339 F.3d 983, 988 (D.C. Cir. 2003), the Court of Appeals explained that "[t]he defense of entrapment has two related elements:  government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." As to the first requirement, for Government

-10-

behavior to amount to inducement, it must be "such that a law abiding citizen's will to obey the law could have been overborne." United States v. McLendon, 378 F.3d 1109, 1114 n. 8 (D.C. Cir. 2004). The record in this case contains no credible evidence that any conduct occurred which would have likely "overborne" the Defendant's will. To the contrary, the informant's conduct in this case was similar to any "garden-variety" drug transaction.

As to the second requirement, only after the defendant has carried his burden of showing that he was induced by the Government to commit a crime he would otherwise not have committed, does the burden then shift to the Government to prove that he was predisposed to commit that crime. Id. Thus, even if inducement was established, the Government would have presented a very strong case of predisposition if the Defendant went to trial. The Defendant had prior drug convictions. He admitted to selling drugs at least "a couple times" when he was approximately 17 years old. In this case, he was found in possession of 62 grams of crack cocaine on at least one occasion before he sold crack to the informant. When he was arrested on April 4, 2000, the police recovered 69 small bags containing a total of 7.8 grams of crack cocaine after the Defendant and his co-Defendant who was the driver were removed from the vehicle. When the Defendant was arrested in 2006, nearly a year after the sales which were the basis of the indictment in this case, the police recovered 31 grams of crack cocaine from his person, plus a firearm, plus over $90,000 in cash from inside the Defendant's vehicle, which he was about to enter when he was arrested. Finally, during the first sale at issue in this case, the Defendant discussed with the confidential informant the possibility of future drug transactions, voluntarily offered greater amounts of drugs to that informant, and offered to sell him powdered cocaine instead of just crack cocaine. On the basis of these facts, there is absolutely no

-11-

question that the Government would have been able to prove predisposition beyond a reasonable doubt.

For all these reasons, the Defendant has not asserted a viable claim of innocence.

**F.      The Government Would Suffer No Prejudice if the Guilty Plea Was Withdrawn**

The final factor to be considered under <u>Curry</u> is "whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case." <u>Hanson</u>, 494 F.3d at 1128.

The Government does not claim that its ability to prosecute this case has been substantially prejudiced. Moreover, Defendant asserted the desire to withdraw his guilty plea barely a week after entering the plea and, thus, there was no delay of any significance between the entry of the guilty plea and the Motion to Withdraw.

## IV.    CONCLUSION

For the many reasons spelled out above, the Court concludes that the Defendant has failed to provide a "fair and just" reason to withdraw his guilty plea in this case.

Gladys Kessler
United States District Judge

October 16, 2007

-12-