UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Case No.: CR-06-208-01 |
| FRANK BERKELEY | : |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Frank Berkeley ("Berkeley"), by and through undersigned counsel, respectfully submits the following Memorandum in Aid of Sentencing. Mr. Berkeley will come before the Court for sentencing after entering a plea of guilty to one count of Unlawful Distribution of 50 Grams or More of Cocaine Base in violation of 21 U.S.C. §841(a)(1) and (b)(1)(A)(iii).

**I.   OBJECTIONS TO PRESENTENCE REPORT**

Mr. Berkeley and undersigned counsel have reviewed the Pre-Sentence Investigation Report ("PSR") prepared by Tennille Losch, United States Probation Officer, and previously submitted the objections to the pre-sentence report. Mr. Berkeley generally objects to the offense level calculations. Mr. Berkeley submits that the offense level should be calculated as cocaine hydrochloride instead of cocaine base under the ***United States v. Brisbane***, 367 F. 3d 910 (D.C. Cir. 2004).[1]

---

[1] Undersigned counsel has explained to Mr. Berkeley that Brisbane is not applicable to his case. However, Mr. Berkeley insisted

## II. SENTENCING GUIDELINES APPLICATIONS

Mr. Berkeley agrees to a certain extent with the Offense Level Computation in the Pre-Sentence Report ("PSR"). According to the PSR, the base offense level is 30 (U.S.S.G. §2D1.1(a)(3) and (c)(5)). The base offense level is increased by 2 points because a dangerous weapon was used or present in relation to the instant offense (U.S.S.G. §2D1.1(b)(1)), for a total offense level of 32. Thus, under the Sentencing Guidelines, the sentencing range is 135 to 168 months imprisonment. However, it is Mr. Berkeley's contention that he should be eligible for a three point reduction in his total offense level for accepting responsibility for his actions, as he has entered a guilty plea in this matter. His Motion to Withdraw his plea should not bar the assignment of such a reduction. Despite having filed such motion, Mr. Berkeley still accepts responsibility for his actions; rather, his withdraw indicates that Mr. Berkeley accepts responsibility for his actions but believes he was entrapped by law enforcement. Thus, if a three point reduction is granted, Mr. Berkeley would have a total offense level of 29, making him eligible for a different sentencing range.

When determining a particular sentence to be imposed, judges are permitted to "appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." United States v. Tucker, 404 U.S. 443, 446 (1972). Furthermore, sentencing decisions must be based upon "reliable information and appropriate considerations." Grant v. United States, 509 A.2d 1147, 1155 (D.C. 1986). The federal sentencing provision states that courts should impose sentences that consider, among other things, the nature and circumstances of the offense and the history and characteristics of the defendant, take into account the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense. 18 U.S.C. §3553(a).

---

that he would like to raise the objection to preserve the issues.

### III. EFFECT OF UNITED STATES V. BOOKER ON SENTENCING

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that its prior decisions in Blakely v. Washington, 124 S. Ct. 2531 (2004), and Apprendi v. New Jersey, 530 U.S. 466, 477 (2000), apply to the United States Sentencing Guidelines. Thus, the Sixth Amendment will be violated by the imposition of an enhanced sentence under the Guidelines based on a sentencing judge's determination of a fact, other than a prior conviction, that was not found by a jury or admitted by the defendant. Id. at 756. As a result, the Court then severed the portions of the federal sentencing statute that makes it mandatory, thus rendering the guidelines advisory. Id. at 757. See also United States v. Ranum, 353 F.Supp.2d 984 (E.D. Wisc. 2005); United States v. Huerta-Rodriguez, 2005 WL 318640 (D. Neb. 2005).

The Court also excised the provision setting forth appellate standards of review, 18 U.S.C. § 3742, and held that sentences should be reviewed under a "reasonableness" standard, to be determined with reference to the standards set forth in 18 U.S.C. § 3553(a). See Booker, 125 S. Ct. at 757, 765-66. Because a district court's sentence is now reviewable for "reasonableness," and can be reversed if found unreasonable, the "upper limit of a lawful sentence is no longer the maximum term of imprisonment under the relevant statute, but rather the highest point within that range that is reasonable." Huerta-Rodriguez, 2005 WL 318640 at 6 (quoting Booker, 125 S. Ct. at 748-49, 754-56 (referring to upper limit as "maximum authorized by the facts established" by guilty plea or jury verdict)).

Post-Booker, although a district court must still consider the Guidelines, it must still consider the other directives of 18 U.S.C. § 3553(a). See Huerta-Rodriguez, 2005 WL 318640 at 5. Under Booker, courts must treat the Guidelines as just one of a number of sentencing factors.

Id. Accordingly, a sentencing court is not bound by the Guidelines, but must "consult" them and "take them into account when sentencing." Booker, 125 S. Ct. at 767.

In Booker, the Supreme Court neither held, nor implied, that the measure of reasonableness was the Guideline sentencing range. See Huerta-Rodriguez, 2005 WL 318640 at 5. Thus, "'any system which [holds] it *per se* unreasonable (and hence reversible) for a sentencing judge to reject the Guidelines is indistinguishable from the mandatory system' that the Supreme Court found unconstitutional." Id. (quoting Booker, 125 S. Ct. at 794 (Scalia, J., dissenting)). "To treat the Guidelines as presumptive[ly reasonable] is to concede the converse, *i.e.*, that any sentence outside the Guideline range would be presumptively unreasonable in the absence of clearly identified factors . . . [and] making the Guidelines, in effect, still mandatory." United States v. Myers, 353 F. Supp. 2d 1026, 1028 (S.D. Iowa 2005)). As a result, a sentencing court should be guided by the consideration of the now-advisory Guidelines along with the statutory factors set forth in 18 U.S.C. § 3553(a). "The directives of Booker, and § 3553(a) make clear that courts may no longer uncritically apply the guidelines and, as one court suggested, 'only depart . . . in unusual cases for clearly identified and persuasive reasons.'" Ranum, 353 F. Supp.2d at 985 (quoting United States v. Wilson, 350 F. Supp.2d 910, 912 (D. Utah 2005)).

### IV.   OFFENSE CONDUCT

Mr. Berkeley has pleaded guilty to one count of Unlawful Distribution of 50 Grams or More of Cocaine Base in violation of 21 U.S.C. §841(a)(1) and (b)(1)(A)(iii). Mr. Berkeley admitted that he was accountable for the offense charged. Additionally, Mr. Berkeley agreed to waive interest in the property and currency associated with the instant offense. Mr. Berkeley

also assisted authorities in the investigation and prosecution of the misconduct by timely notifying authorities of his intent to enter a guilty plea.

## V.   SECTION 3553(a) FACTORS

When determining a particular sentence to be imposed 18 U.S.C. § 3553(a) requires courts to consider in relevant part: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; … and (7) the need to provide restitution to any victims of the offense.

**1. Nature and circumstances of the offense and history and characteristics of the defendant**

The PSR notes that no victims have incurred a financial loss or suffered a physical harm as a result of the Mr. Berkeley's conduct.  However, Mr. Berkeley is not minimizing the seriousness of the instant offense.  He openly admits to having committed the crime charged. However, in the past years, Mr. Berkeley has moved past these mistakes.

Mr. Berkeley has struggle all his life to overcome adversity.  Born in Panama, for the first few years of his life, he lived with his mother and has no meaningful guidance from the father.   At the age of  5, Mr. Berkeley's father brought him to the United States

Despite his troubled origins and living at the poverty level,Mr. Berkeley has a strong support from his family and developed a strong character.  Mr. Berkeley's brother described him as determined and noted that he always follows through on promises.  Mr. Berkeley's girl friend describe him as a very loving father.

It appears that Mr. Berkeley's serious entanglement with criminal activities begin soon after his brother passed away due to car accident. Perhaps one may say that due to this tragic event, Mr. Berkeley has departed from his not having any convictions or involved with drug activities to having criminal convictions and involved in drug culture in very short time.

### 2.    The need for the sentence imposed

The offense occurred over two years ago.   Upon release, Mr. Berkeley intends to live with either his mother, Zonia Siebert, or his girlfriend, Ayesha McKeithan, who each indicated that she would be supportive of him while supervised by the probation office.  Their home is in a residential neighborhood in New Carlton, MD.

### 7.    Need to provide restitution

Here, the offenses committed by Mr. Berkeley did not cause any individuals to sustain financial loss or physical harm.  Mr. Berkeley has also been found by the Court to be unable to pay a fine within the guideline range.

### VI.    SECTION 3553(a)(2) CONSIDERATIONS

In addition to considering the above factors, the Court is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are, in relevant part: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

A.    **Seriousness of the offense, respect for the law, just punishment**

In arguing that no individuals suffered financial loss or physical harm from his conduct, Mr. Berkeley is not minimizing the seriousness of his offense. In fact, he openly admitted what he did and took responsibility for his actions. He has been incarcerated following his arrest and was released August 2, 2005, and is keenly aware of the ramifications of his unlawful activity. As a consequence of the conviction for the instant offense, Mr. Berkeley is facing removal to Panama as a result of his status as a non-citizen. Mr. Berkeley has no familiar contacts in Panama and does not speak Spanish; he is well aware of the detrimental effects of his criminal activity.

B.    **Deterrence to criminal conduct**

Mr. Berkeley has demonstrated that he is eager to abide by the law. Incarceration for an extended period of time would interrupt any new success he plans to achieve and would reintroduce him to criminal society within the corrections system. Thus, a term of incarceration on the low end of the sentencing range would more than adequately serve as a deterrent to further criminal activity.

C.    **Protection from further crimes**

As the PSR states, Mr. Berkeley committed the instant offense on August 2, 2005. Since that time, Mr. Berkeley has had ample time to reflect upon the gravity of his mistakes and make a conscious decision to become a law-abiding citizen. Mr. Berkeley has indicated a strong desire to be an asset to his family and society, and over two years have past since the instant offense. He is a new man and is unlikely to commit any further offenses. In fact, since his release, Mr. Berkeley has not been involved in any drug activities except to aid law enforcement.

D.    **Provide treatment and training**

The PSR indicates that Mr. Berkeley is in good physical condition and has never suffered from any mental or emotional problems. Thus, a maximum prison sentence will not serve to rehabilitate Mr. Berkeley in a manner that cannot be addressed with the imposition of a lesser sentence.

## VI.    RECOMMENDATION

In this particular case, United States Probation Officer Johnson has stated that the guideline range for imprisonment for Mr. Berkeley is 135 to 168 months. In this case, two years have passed since the instant offense. In that time, Mr. Berkeley has exhibited a strong desire to turn his life around. Mr. Berkeley has made it clear that he has learned his lesson following the instant offense and is remorseful for his actions. Additionally, it is Mr. Berkeley's contention that he should be eligible for a three point reduction in his total offense level for accepting responsibility for his actions, as he has entered a guilty plea in this matter. His Motion to Withdraw his plea should not bar the assignment of such a reduction. Despite such motion, Mr. Berkeley still accepts responsibility for his actions; rather, his motion indicates that Mr. Berkeley accepts responsibility for his actions but believes he was entrapped by law enforcement. Accordingly, Mr. Berkeley respectfully requests that the Court allow a three point reduction in his total offense level and then impose a reasonable sentence. A reasonable sentence considering 18 U.S.C. §3553(a) would be the imposition of a sentence of 60 months with credit for the time already served by Mr. Berkeley. [2]

Respectfully submitted,

---

[2] Counsel is asking this sentence at the request of Mr. Berkeley. Counsel has explained to Mr. Berkeley that in his case the Honorable Gladys Kessler must sentence at least 10 years.

By:      */s/ Harry Tun*
Harry Tun (Bar # 416262)
400 Fifth Street, NW
Suite 300
Washington, DC  20001
*Counsel for Frank Berkeley*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February, 2008, a copy of the foregoing to be delivered by electronic e-mail to Perham Gorji, Assistant United States Attorney, Federal Major Crimes Section, 555 Fourth Street, N.W., Washington, D.C. 20530.

/s/ *Harry Tun*

Harry Tun, Esquire