

U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

**FILED**

FEB 12 2008

Clerk, U.S. District and
Bankruptcy Courts

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

December 3, 2007

Tennille Losch
United States Probation Officer
U.S. Courthouse
333 Constitution Avenue., N.W.
Washington, D.C. 20001
Phone: (202) 565-1385
Fax: (202) 273-0242

BY MAIL and BY FAX

        Re:   United States v. Frank Berkeley.
                Case No. 06-208 (GK)

Dear Ms. Losch:

    I am in receipt of your Presentence Investigation Report (PSR) in the above-referenced case. The government submits that the defendant's total offense level should be increased by two points, and that paragraph numbers 13 and 21 of the PSR be corrected, to reflect the proper application of the obstruction of justice enhancement under the Sentencing Guidelines. The obstruction of justice enhancement is warranted here, pursuant to U.S.S.G. § 3C1.1, because defendant Frank Berkeley ("Berkeley" or "the Defendant") deliberately made false statements under oath in connection with his motion to withdraw his guilty plea.

    Berkeley pled guilty on September 29, 2006, and filed his motion to withdraw his guilty plea on February 2, 2007, prior to sentencing. A hearing on the motion was held on August 9, 2007. To establish that withdrawal was appropriate, Berkeley was required to assert a viable claim of innocence, and show that his guilty plea was somehow tainted and that the delay between the guilty plea and the motion to withdraw did not prejudiced the government's ability to prosecute the case. United States v. Curry, 494 F.3d 1124, 1128 (D.C. Cir. 2007), accord United States v. West, 392

F.3d 450, 455 (D.C. Cir. 2004) (quoting United States v. Hanson, 339 F.3d 983, 988 (D.C. Cir. 2003)).

The government did not claim any prejudice as a result of Berkeley's motion. Thus, to satisfy his burden, Berkeley maintained that his plea was constitutionally deficient because, according to Berkeley, he was pressured into entering his plea by, and received ineffective assistance from, his former attorney. Berkeley also alleged that he was legally innocent of the charges because he was pressured into selling the drugs by the government's confidential informant. Berkeley made materially false statements under oath in support of all three of these claims.

First, the Court found Berkeley's testimony not to be credible when he testified that Doug Wood "scared" him into accepting the plea offer (Docket No. 46, Memorandum Opinion at 4). At the hearing, Berkeley claimed that Doug Wood was so angry in the cellblock moments before the plea hearing that Berkeley became "scared" of Wood and entered his plea out of fear (8/9/07 Tr. 26-27; Docket No. 46, Memorandum Opinion at 4).[1] As the Court specifically found, "The Defendant's testimony was simply not credible." (Docket No. 46, Memorandum Opinion at 4.) Commenting that Berkeley's testimony "clearly served his own self-interest in trying to withdraw the guilty plea," the Court credited the testimony of Doug Wood, who contradicted Berkeley's testimony (id.). Simply put, as the Court found, Doug Wood did not "scare" Berkeley or pressure Berkeley into entering his guilty plea.

The Court also discredited Berkeley's testimony that he informed Doug Wood that the government's informant had pressured and threatened him (Docket No. 46, Memorandum Opinion at 7-8). In support of his claim that he was denied effective assistance of counsel as a result of Mr. Wood's representation, Berkeley contended that Wood failed to consider facts that supported an alleged defense of entrapment and duress (8/9/07 Tr. 20, 65). Specifically, Berkeley testified that he had informed Doug Wood about a threatening letter the government's informant had sent him, in which the informant allegedly pressured Berkeley into selling drugs to the informant (id. at 16-17, 36). Doug Wood testified to the contrary, insisting that Berkeley never mentioned that the informant had pressured him at all, or that the informant ever sent Berkeley a threatening letter (id. at 121-23). The Court specifically credited Doug Wood's testimony, and concluded that Berkeley failed to tell Mr. Wood about any such letter (Docket No. 46, Memorandum Opinion at 7-8).

Finally, in ruling that Berkeley had not established a viable claim of innocence, the Court found that there was "no credible evidence that any conduct occurred which would have likely 'overborne' the Defendant's will." (Docket No. 46, Memorandum Opinion at 11.) The Court therefore implicitly rejected Berkeley's contention that the informant had threatened Berkeley, thus pressuring him into selling drugs to the informant (see 8/9/07 Tr 13-16). Rather, the Court concluded that "the informant's conduct in this case was similar to any 'garden-variety' drug transaction." (Docket No. 46, Memorandum Opinion at 11.)

---

[1] "Tr." preceded by a date and followed by a page number or numbers refers to the transcript of the hearing in this case, on the date and at the page(s) indicated.

2

The Court's findings make clear that Berkeley testified falsely in stating 1) that his attorney "scared" him, thereby pressuring him to accepting the plea offer; 2) that the informant pressured him into selling the drugs by sending him a threatening letter; and 3) that he informed his attorney about the threatening letter and pressure from the informant. Where a defendant obstructs justice by falsely testifying in support of a motion to withdraw a guilty plea, the Sentencing Guidelines call for an enhancement to the defendant's offense level pursuant to U.S.S.G. § 3C1.1. See, e.g., United States v. Carroll, 412 F.3d 787, 792 (7th Cir. 2005); United States v. Adam, 296 F.3d 327, 335 (5th Cir. 2002) ("[S]tatement under oath regarding the circumstances surrounding his guilty plea, which the district court found to be untruthful, . . . led the court to impose the obstruction of justice enhancement"); United States v. Freixas, 332 F.3d 1314, 1321 (11th Cir. 2003) (applying commentary to § 3C1.1 that obstruction of justice can consist of "providing materially false information to a judge"); accord U.S.S.G. § 3C1.1 (application note 4(b)). Here, the government has shown, by clear and convincing evidence, that Berkeley's testimony was wilfully false and material to the proceedings. See United States v. Gaviria, 116 F.3d 1498, 1518 (D.C. Cir. 1997) (upholding sentencing court's application of obstruction of justice enhancement based on "clear and convincing evidence" that the defendant wilfully gave materially false testimony, where district court credited a witness's testimony that contradicted defendant's testimony), cert. denied sub nom., 522 U.S. 1082, 1132 (1998).

Accordingly, the government requests that the PSR be corrected by adding two points to Berkeley's total offense level to reflect the proper application of the obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1.

If you have any questions about the government's position, please give me a call at my office number. (202) 514-5060.

Sincerely,

Perham Gorji
Assistant U.S. Attorney
Delaware Bar No. 3737
U.S. Attorney's Office
555 4th Street, N.W., Rm 8253
Washington, D.C. 20530
(202) 514-5060
perham.gorji@usdoj.gov

cc: Harry Tun, Esq.

*attachment*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Criminal No. 06-208 (GK) |
| FRANK BERKELEY, | : |
| Defendant. | : |

**FILED**

OCT 1 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

<u>MEMORANDUM OPINION</u>

The Defendant, Frank Berkeley, filed a Motion to withdraw his guilty plea ("the Motion"). Upon consideration of the Motion, the Opposition, the Reply, the evidentiary hearing held on August 9, 2007, the post-hearing Memoranda, the applicable case law, and the entire record herein, the Court concludes that the Motion should be **denied**.

I.     **BACKGROUND**

On July 11, 2006, the Defendant was indicted on two counts of unlawful distribution of 50 grams or more of cocaine base in violation of 21 U.S.C. Section 841(a)(1) and Section 841(b)(1)(A)(iii). He was arrested on July 19, 2006. On August 3, 2006, Douglas Wood, Esq. ("Wood" or "Doug Wood"), entered his appearance on behalf of Defendant as retained counsel. The Defendant had retained Mr. Wood as his counsel on prior occasions. At the Status Conference on August 3, 2006, the Defendant requested additional time in order to review the discovery materials (primarily video and audio tapes of the transactions in question) and assess the case; the request was granted. At another Status Conference on August 29, 2006, the Defendant again requested additional time in order to evaluate the Government's plea offer; the request was granted. At a Status

**FILED**

FEB 1 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Conference on September 14, 2006, at the request of the Defendant, a plea hearing was set for September 29, 2006.

At the September 29, 2006 hearing, pursuant to the plea agreement, the Defendant entered a plea of guilty to one count of the two-count indictment, of unlawful distribution of 50 grams or more of cocaine base, in violation of 21 U.S.C. Section 841(a)(1) and Section 841(b)(1)(A)(iii), pursuant to a full and comprehensive colloquy as mandated by Fed. R. Crim. P. 11. Among the many subjects discussed at that plea hearing, Defendant was informed that the charge to which he plead guilty carries a penalty of no less than 10 years and no more than life.

On October 5, 2006, barely a week after entering his plea, Defendant filed a Motion to Substitute Counsel. That request was granted and Harry Tun, Esq. entered his appearance on behalf of Defendant. At that time, the sentencing hearing was reset for February 15, 2007. On February 2, 2007, the Defendant filed the present Motion requesting to withdraw his guilty plea. Because of the pendency of this Motion, the sentencing hearing date was vacated and a status was set for February 14, 2007. Thereafter, various pleadings were filed, a full-day evidentiary hearing was held, and post-hearing memoranda were filed.[1]

## II.   LEGAL STANDARD

Pursuant to Fed. R. Crim. P. 11(d)(2)(B), a defendant may withdraw a guilty plea prior to sentencing if he "can show a fair and just reason for requesting withdrawal." The defendant bears the burden of proving that there are valid reasons for withdrawal. Id.; United States v. Rogers, 387 F.3d 925, 932 (7th Cir. 2004). In United States v. Curry, 494 F.3d 1124, 1128 (D.C. Cir. 2007), our

---

[1]   Substantial delays were encountered because of the serious medical condition of one of Defendant's attorneys and his various hospitalizations.

Circuit recently reiterated the three factors to be considered in determining whether a motion to withdraw a guilty plea prior to sentencing should be granted, i.e.,

> (1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted.

494 F.3d at 1128.

Defendant makes many arguments as to why he should be allowed to withdraw his guilty plea, all of which will be addressed seriatim. Essentially, he maintains that his prior lawyer, Doug Wood, failed to inform him of the entrapment defense because he had a conflict of interest stemming from his representation of Berkeley's co-defendant when they were both arrested in 2000 in Prince Georges County, Maryland on drug charges. According to the Defendant, Wood believed that the 2000 arrest would be used against him in the present case to show predisposition, thereby jeopardizing any entrapment defense he might present. Were this to happen, according to Defendant, Wood would then have to withdraw as counsel in the present case. He also argues that he was deprived of his constitutional right to effective assistance of counsel because Wood never informed him of the entrapment or duress defense, and that had he been so informed, he would have proceeded to trial on one or both of those defenses, rather than enter a plea of guilty. There is simply no credible evidence to support these highly speculative theories.

### III. ANALYSIS

#### A. The Guilty Plea Was Not Tainted by Any Non-Compliance with Fed. R. Crim. P. 11

Defendant does not claim that his plea proceeding violated any of the requirements of Fed. R. Crim. P. 11. A defendant "who fails to show some error under Rule 11 has to shoulder an

-3-

extremely heavy burden if he is to ultimately prevail" in his effort to withdraw his plea. United States v. Cray, 47 F.3d 1203, 1208 (D.C. Cir. 1995) (citations omitted).

### B. Defendant Was Not Pressured or Coerced Into Entering His Plea

As an initial matter, Defendant argues that he was unduly pressured to enter the plea by both the Government and his attorney, Doug Wood. At the Rule 11 colloquy, the Court asked very specific questions as to whether the Defendant had been pressured in any way by any person to enter his guilty plea and whether he was acting voluntarily and of his own free will. Based on his demeanor and answers to questions, the Court made findings that the Defendant was acting freely and voluntarily and had not been subjected to any undue or inappropriate pressure.

The Defendant argued at the evidentiary hearing that immediately before the plea hearing, in the cellblock behind the courtroom, Wood was so angry about the Defendant's wish to change his mind that the Defendant became "scared" and entered the plea out of fear. The Defendant's testimony was simply not credible.

First, he testified totally to the contrary at the plea hearing. Moreover, at the Motion hearing, he admitted that Wood said, "do what you want to do. I'm getting tired of you." Nor did Wood ever say he would not represent the Defendant if he insisted on going to trial. Second, Doug Wood had previously been retained by the Defendant in three other criminal cases and had obtained favorable results for him. There is no reason to believe, given this four-year relationship, that Defendant would suddenly have become "scared" of Wood. Third, the Defendant had been given several continuances and ample time to consider whether he wished to go forward with the plea. Fourth, the testimony the Defendant gave at the evidentiary hearing clearly served his own self-interest in trying to withdraw the guilty plea. Finally, the Court credits the testimony of Doug Wood, a highly

-4-

experienced, extremely capable attorney, who has represented many defendants on drug distribution and related charges. Sometimes Mr. Wood goes to trial and sometimes he negotiates a plea for his client. The Court simply does not believe, especially in the context of their extended professional relationship, that he "scared" Mr. Berkeley into entering a guilty plea his client did not wish to enter.[2]

### C. Doug Wood Did Not Have a Conflict of Interest

As noted earlier, the Defendant argues that his prior defense counsel had a conflict of interest in this case which would justify allowing him to withdraw his guilty plea. The Supreme Court held in Cuyler v. Sullivan, 446 U.S. 335, 348 (1980), that a criminal defendant makes a showing sufficient to support a finding of constitutionally deficient representation if he can demonstrate that "an actual conflict of interest adversely affected the lawyer's performance." Our Circuit has noted that "[b]y making the required showing under Cuyler, a defendant avoids the more stringent two-part test for ineffective assistance set forth in Strickland [v. Washington, 466 U.S. 668 (1984)]," United States v. Gantt, 140 F.3d 249, 254 (D.C. Cir. 1998), because satisfaction of the Cuyler standard gives rise to a presumption of prejudice to the defendant's interests. United States v. Tolson, 372 F. Supp. 2d 1, 12 (D.D.C. 2005).

Defendant claims that if he had gone to trial, Wood would have had a conflict of interest if either he or the Government were to call Dennis Butler, the Defendant's co-defendant in the 2000 Maryland arrest, as a witness. Defendant further argues that if he had gone to trial and relied upon the entrapment defense, which he claims he was never told about, that the Government would then

---

[2] Mr. Wood acknowledged in his testimony that he felt strongly that the Defendant could not win the case by going to trial because the videotapes and audiotapes presented overwhelming evidence of his guilt. Consequently, Wood strongly urged his client to accept the plea because he felt it was the best alternative facing him in an essentially "no-win" situation.

-5-